UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

KIRK A. SWANSON,                                    Civ. No: 15-cv-06938

                           Plaintiff,

                -against-

BATTERY PARK CITY AUTHORITY, and
SHARI HYMAN,

                           Defendants.

-----------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**


VANDENBERG & FELIU, LLP
Attorneys for Defendants
60 East 42nd Street, 51st Floor
New York, NY 10165
(212) 763-6800

i

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………………………………ii

Preliminary Statement.......................................................................................................... 1

Statement of Facts ............................................................................................................... 3

    General Allegations Regarding Swanson's Employment and Job Duties................................. 3

    Allegations Regarding a Sexual Harassment Issue Involving Another Employee.................... 4

    Allegations Regarding a Failure to Comply with Procurement Guidelines ............................. 5

    Allegations Regarding Jurisdiction and Requiring Judicial Notice .......................................... 6

POINT I
Pleading Requirements Pursuant to FRCP 12(b)(6) ................................................................. 7

POINT II
Plaintiff's Title VII Retaliation Claim Should be Dismissed ................................................... 8

    A.  The Application of *Iqbal/Twombly* to Retaliation Cases ................................................... 8

    B.  The Complaint Does Not Support a Title VII Retaliation Claim ....................................... 9

        i.   The Complaint Fails To Satisfy The "But For" Standard ...................................... 9

        ii.  The Complaint Fails To Plead Temporal Proximity As a Matter of Law ............. 11

POINT III
The Remaining State Law Claims Should be Dismissed for
Lack of Subject Matter Jurisdiction ...................................................................................... 13

POINT IV
Plaintiff's NYCHRL Retaliation Claim Should be Dismissed ............................................... 14

POINT V
Plaintiff's NYFCA Retaliation Claim Should be Dismissed ................................................... 16

    A.  Plaintiff Did Not Engage In Protected Activity ............................................................... 17

        i.   The Complaint Fails To Allege A Viable NYFCA Claim...................................... 17

        ii.  Plaintiff Was Acting Within His Normal Duties and Responsibilities.................. 19

        iii. Plaintiff Failed to Put BPCA on Notice of Protected Activity .............................. 21

Conclusion .......................................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Abraham v. New York Dep't of Educ.*,
  No. 06 Civ. 01053, 2011 WL 890749 (E.D.N.Y. Mar. 11, 2011) ........................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).................................................... 7, 12

*Baldwin v. Cablevision Sys. Corp.*,
  65 A.D.3d 961, 888 N.Y.S.2d 1 (1st Dept. 2009)............................................................. 11, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)............................................... 7, 8, 16

*Britt v. Merrill Lynch & Co.*,
  No. 08 Civ. 5356, 2011 WL 4000992 (S.D.N.Y. Aug. 26, 2011) ........................................... 15

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)........................................................... 14

*Clark Cnty. Sch. Dist. v. Breeden*,
  532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) ...................................................... 11

*Dabney v. Christmas Tree Shops*,
  958 F. Supp. 2d 439 (S.D.N.Y. 2013)..................................................................................... 12

*El Sayed v. Hilton Hotels Corp.*,
  627 F.3d 931 (2d Cir. 2010).................................................................................................... 12

*Faldetta v. Lockheed Martin Corp.*,
  No. 98 Civ. 2614, 2000 WL 1682759 (S.D.N.Y. Nov. 9, 2000) ........................................... 17

*Feliciano v. Alpha Sector, Inc.*,
  No. 00 Civ. 9309, 2002 WL 1492139 (S.D.N.Y. July 12, 2002) ........................................... 12

*Feliciano v. City of New York*,
  No. 14 Civ. 6751, 2015 WL 4393163 (S.D.N.Y. July 15, 2015) ........................................... 15

*Forkell v. Lott Assisted Living Corp.*,
  No. 10 Civ. 5765, 2012 WL 1901199 (S.D.N.Y. May 21, 2012)........................................... 17

*Garcetti v. Ceballos*,
  547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)...................................................... 19

*Gonzales v. Nat'l Westminster Bank PLC*,
  847 F. Supp. 2d 567 (S.D.N.Y. 2012)....................................................................................... 7

*Gorokhovsky v. New York City Hous. Auth.*,
    552 F. App'x 100 (2d Cir. 2014) .................................................................................. 13, 15

*Henry v. NYC Health & Hosp. Corp.*,
    18 F. Supp. 3d 396 (S.D.N.Y. 2014)........................................................................... 11, 13

*Johnson v. The Univ. of Rochester Med. Ctr.*,
    686 F. Supp. 2d 259 (W.D.N.Y. 2010) .............................................................................. 21

*Kolenovic v. ABM Indus. Inc.*,
    361 F. App'x 246 (2d Cir. 2010) ....................................................................................... 13

*Landfield v. Tamares Real Estate Holdings, Inc.*,
    112 A.D.3d 487, 976 N.Y.S.2d 381 (2013) ................................................................. 19, 21

*Liburd v. Bronx Lebanon Hosp. Ctr.*,
    No. 07 Civ. 11316, 2009 WL 900739 (S.D.N.Y. Apr. 3, 2009)............................................ 21

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015).................................................................................................. 8

*Luckey v. Baxter Healthcare Corp.*,
    2 F. Supp. 2d 1034 (N.D. Ill. 1998) .................................................................................. 18

*McAllan v. Von Essen*,
    517 F. Supp. 2d 672 (S.D.N.Y. 2007)........................................................................... 17, 21

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)................................................................................................ 14

*Monsour v. New York State Office for People with Developmental Disabilities*,
    No. 13 Civ. 0336, 2014 WL 975604 (N.D.N.Y. Mar. 12, 2014)............................................ 17

*Moor-Jankowski v. Bd. of Trustees of New York Univ.*,
    No. 96 Civ. 5997, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998) ............................................ 18

*Morey v. Somers Cent. Sch. Dist.*,
    410 F. App'x 398 (2d Cir. 2011) ................................................................................. 19, 20

*Murray v. Visiting Nurse Servs. of N.Y.*,
    528 F. Supp. 2d 257 (S.D.N.Y. 2007)................................................................................ 16

*Pedrosa v. City of New York*,
    No. 13 Civ. 01890, 2014 WL 99997 (S.D.N.Y. Jan. 9, 2014)............................................... 16

*Ruhling v. Tribune Co.*,
    No. 04 Civ. 2430, 2007 WL 28283 (E.D.N.Y. Jan. 3, 2007).................................................. 11

*Smith v. Johnson*,
   No. 14 Civ. 3975, 2014 WL 5410054 (S.D.N.Y. Oct. 24, 2014) ............................................ 13

*Soloviev v. Goldstein*,
   No. 14 Civ. 5035, 2015 WL 2249996 (E.D.N.Y. May 13, 2015) ........................................... 10

*Stoddard v. Eastman Kodak Co.*,
   309 F. App'x 475 (2d Cir. 2009) ..................................................................................... 12

*Thomson v. Odyssey House*,
   No. 14 CV 3857, 2015 WL 5561209 (E.D.N.Y. Sept. 21, 2015) ............................................ 9

*U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*,
   451 F. Supp. 2d 613 (S.D.N.Y. 2006) ............................................................................. 21

*U.S. ex rel. Schweizer v. Oce N.V.*,
   677 F.3d 1228 (D.C. Cir. 2012) ..................................................................................... 22

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*,
   389 F.3d 1251 (D.C. Cir. 2004) ..................................................................................... 22

*U.S. ex rel. Yesudian v. Howard Univ.*,
   153 F.3d 731 (D.C. Cir. 1998) ....................................................................................... 18

*U.S. ex rel. Ivanov v. Exelis, Inc.*,
   41 F. Supp. 3d 50 (D.D.C. 2014) ................................................................................... 20

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. __, 133 S.Ct. 2517 (2013) ................................................................................ 9

*Vega v. Hempstead Union Free Sch. Dist.*,
   No. 14 Civ. 2265, 2015 WL 5127519 (2d Cir. Sept. 2, 2015) ...................................... 8, 9, 10

*Weiss v. JPMorgan Chase & Co.*,
   No. 06 Civ. 4402, 2010 WL 114248 (S.D.N.Y. Jan. 13, 2010) ............................................ 15

*Zann Kwan v. Andalex Grp. LLC*,
   737 F.3d 834 (2d Cir. 2013) ........................................................................................... 9

**<u>Statutes</u>**

28 U.S.C. §1331 ............................................................................................................... 13

42 U.S.C. §2000e ............................................................................................................... 1

42 U.S.C. §2000e-3(a) ......................................................................................................... 8

New York City Administrative Code, §8-107 ................................................................... 1, 14

N.Y. State Fin. Law § 188(1)(a) (McKinney) ................................................................ 17

N.Y. State Fin. Law § 188(2) (McKinney) .................................................................... 17

N.Y. State Fin. Law § 191 (McKinney) .......................................................................... 1

N.Y. State Fin. Law § 191(1) (McKinney) .................................................................... 17

## **Other Authorities**

*"Exec's Bidder End", New York Post, September 30, 2015, p. 3*……………………………*passim*

*Weighing Temporal Proximity in Title VII Retaliation Claims,*
    *43 B.C. L. Rev. 741 (2002)*……………………………………………………………10

## **Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................. 1, 7, 24

Fed. R. Civ. P. 12(b)(1).................................................................................... 1, 24

Defendants Battery Park City Authority ("BPCA") and Shari Hyman ("Hyman") (collectively, "Defendants"), by their attorneys Vandenberg & Feliu, LLP, respectfully submit this Memorandum of Law in support of their motion for an Order, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Complaint in its entirety for failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction.

## Preliminary Statement

Plaintiff Kirk Swanson ("Plaintiff" or "Swanson") is a former employee of BPCA who claims that he was terminated in retaliation for his participation in various forms of protected conduct.  In Counts One and Two he claims that he voiced opposition relating to the sexual harassment of another BPCA employee, and that his termination three months later violated Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII") and the New York City Human Rights Law, New York City Administrative Code, §8-107, *et seq*. ("NYCHRL").  In Count Three, Swanson claims that he raised concerns regarding alleged violations of BPCA's contract procurement guidelines and that his subsequent termination was retaliatory and therefore in violation of the New York False Claims Act, N.Y. State Fin. Law § 191 (McKinney) ("NYFCA").  Counts One and Three are asserted against BPCA only, while Count Two is asserted against both Defendants.

As set forth more fully below, Swanson's retaliation claims are deficient as a matter of law.  With respect to the Title VII claim, Plaintiff fails to articulate any causal connection whatsoever between his alleged opposition to sexual harassment and his termination. To the extent that Plaintiff relies on the timing of his alleged protected activity in relation to his termination, such reliance is misplaced for two reasons.  First, his bare allegation that his termination was in retaliation for protected activity that occurred three months earlier is

1

insufficient as a matter of law.  Second, even if there was sufficient temporal proximity, which there is not, Swanson fails to "plausibly allege" a *'but for'* cause of his termination, that is, that he would not have been terminated absent a retaliatory motive.  Such 'but for' cause is a mandatory element of a retaliation claim brought under Title VII, yet, the Complaint is bereft of any facts that would support this conclusion.  To the contrary, other Complaint allegations, as well as public statements by Plaintiff's counsel, directly contradict it.

If the Title VII claim (the only Federal claim raised in this case) is dismissed, this Court will no longer have subject matter jurisdiction over the remaining non-federal claims. Accordingly, the entire Complaint should then be dismissed.

Should this Court consider the state and city law claims, however, they too fail to meet the requisite pleading standard to survive this motion.  With respect to the NYCHRL claim, as with Plaintiff's Title VII claim, the Complaint fails to sufficiently allege a causal connection between Plaintiff's alleged protected activity and his termination three months later.  Moreover, Swanson's claim under the NYCHRL must be dismissed because he fails to plausibly allege any facts demonstrating that the alleged decision-maker, Defendant Hyman, was aware of any activity he engaged in that would be protected under the statute.  This defect is fatal to his claim.

Finally, Swanson's NYFCA claim is fundamentally flawed for a number of reasons.  First, the alleged protected activity, as described by Plaintiff, amounts to nothing more than plaintiff's internal complaints about BPCA staff's alleged attempts to circumvent BPCA's own procurement processes.  The Complaint makes no allegation whatsoever that there was any "false claim," as defined by the New York State Finance Law.  Second, even if the Complaint did include an allegation regarding activity protected under the False Claims Act (which it does not), the claim still should be dismissed.  Swanson, a compliance officer with responsibility for

assuring BPCA's compliance with its contract procedures, claims that he was fired for trying to ensure that proper procurement protocols were followed.  In other words, Swanson is alleging that he was fired for doing his job, an allegation confirmed in the local news by Plaintiff's counsel just a few weeks ago.  It is well-settled that such an allegation is insufficient to make out a NYFCA claim.  Finally, the Complaint should be dismissed because Plaintiff fails to allege that BPCA was on notice of a potential NYFCA claim, as is required.  Indeed, the factual allegations supporting the claim are superficial and threadbare.  Swanson alleges he merely referred to one contractual process as "bogus," and sent an email requesting that certain issues with the other contract "be remedied."

Accordingly, these deficiencies compel dismissal of the Complaint in its entirety.

## Statement of Facts

Plaintiff's factual allegations are accepted as true for the purposes of this dismissal motion.  A brief summary of these allegations is set forth below.

## General Allegations Regarding Swanson's Employment and Job Duties

Plaintiff was employed by BPCA from November 2012 to May 2014, in various positions.  Complaint, ¶ 2. He started as Deputy Chief Administrative Officer, was then given the title of Internal Controls Officer and later named Chief Contracting Officer.  Complaint ¶ 11.  His responsibilities in these roles included general administration, compliance and diversity.  *Id.*

Swanson asserts that he was promoted twice in 2013, first, to Chief Administrative Officer in March 2013, and then to Vice-President of Administration in December 2013.  Complaint ¶¶ 11-12.  He retained his roles as Chief Contracting Officer and Internal Controls Officer, and took on additional responsibilities with respect to information

technology, permitting, lease administration, compliance operations and some unidentified human resource functions.  Complaint ¶ 12.

**Allegations Regarding a Sexual Harassment Issue Involving Another Employee**

The facts which form the basis of Plaintiff's retaliation claims under Title VII and the New York City Human Rights Law are set forth in four paragraphs of the Complaint.  In sum, Plaintiff claims that in January 2014 he learned that Elizabeth Papanicoloaou, a BPCA employee who reported to him, had been "treated in an offensive and harassing way based on her sex" by Brenda McIntyre ("McIntyre"), BPCA's Vice President of Human Resources, and Robert Serpico ("Serpico"), BPCA's Acting President at the time.  Plaintiff asserts that Ms. Papanicoloaou had already filed a formal complaint with the Governor's Office of Employee Relations. Complaint, ¶ 13.  Nevertheless, Plaintiff alleges that he communicated with Kevin McCabe ("McCabe"), Special Assistant to BPCA Chairman Dennis Mehiel ("Mehiel"), regarding "his concern" about the harassment, and "requested that Mehiel should take action." Complaint, ¶ 14.  Plaintiff alleges that he and McCabe "discussed Mr. Serpico's long history of sexually inappropriate behavior." *Id.*

Subsequently, Plaintiff learned that Hyman, McIntyre and Serpico, and Acting General Counsel Seema Singh ("Singh"), had several "closed-door meetings" regarding revisions to the BPCA employee handbook.  Complaint, ¶ 15.  Plaintiff expressed his opinion that such meetings were "inappropriate" to McCabe.  Complaint, ¶ 16.  Plaintiff also confronted McIntyre "about her conduct" and "his opposition to her behavior."  *Id.*  The Complaint fails to specify what "behavior" and "conduct" Swanson allegedly addressed with McIntyre in this conversation, whether it was her alleged harassment, or her participation in employee handbook meetings.  Swanson then asserts that Hyman was directed by Mehiel to announce that McIntyre

would no longer report to Swanson.  *Id*.  There are no further allegations in the Complaint concerning any sexual harassment issue.  *See generally* Complaint, ¶¶ 16-36.

**Allegations Regarding a Failure to Comply with Procurement Guidelines**

Plaintiff alleges that, beginning in February 2014, he "discovered that high-level BPCA employees were making false statements in an effort to bypass the BPCA's contract approval process."  Complaint, ¶ 17.  The Complaint recites allegations related to two particular projects.  First, Plaintiff takes issue with the manner in which BPCA internally processed contracts with the vendors responsible for redesigning two websites; BPCA's website and the Battery Park Conservancy website.  Complaint, ¶ 18.  Plaintiff alleges that BPCA "misleadingly" made the decision to have two separate contracts not because the work related to two separate websites, but in order to enable the expenditures to be designated as "discretionary procurements."  Complaint, ¶ 20.  Plaintiff also alleges that BPCA failed to act in accordance with its own procurement guidelines when it only obtained two bids for the projects, one of which Plaintiff claims did not appear legitimate "based on the absence of documentation." Complaint, ¶ 21.  The Complaint does not explain what documentation was absent, nor does it explain how that missing documentation gives rise to an inference that the bid was illegitimate. The Complaint states that Plaintiff expressed his concern about the above objections by simply telling McCabe that the "situation" was "utterly bogus."  Complaint, ¶ 22.

Plaintiff also alleges that he discovered that the work on the two websites started before the contracts were approved, and that he "expressed his continued objections" to McCabe. Complaint, ¶ 22.  Notably, Plaintiff does not allege that the projects were not ultimately approved by the BPCA's Contract Selection Committee ("CSC"), which Plaintiff as Chief Contracting Officer chaired personally.  Nor does the Complaint allege that Plaintiff expressed

any of his "objections" to the CSC at the time the contracts were approved.  Indeed, other than his broad comments to McCabe, Plaintiff does not allege that he raised any issues regarding the website project procurement with anyone (until after he was terminated).

Swanson claims to have learned of a second alleged violation of BPCA's procurement guidelines in March 2014, regarding Acting General Counsel Singh's retention of outside counsel.  Complaint, ¶ 24.  Plaintiff alleges that the contract was not "presented for approval" to the CSC, that unspecified "contract documents" erroneously referred to outside counsel as "pre-qualified," and was presented to Swanson's Deputy for approval when Swanson was on vacation.  Complaint, ¶ 25.

On April 8, 2014, one month after learning of the alleged violations, Swanson "sent an email to Ms. Singh addressing these issues and *requesting* that they be remedied."  Complaint, ¶ 26 (emphasis added).

Hyman advised Swanson on April 11, 2014, that his employment was being terminated in thirty days, citing his April 8 email to Singh as one of the reasons for his termination. Complaint, ¶ 27.

## Allegations Regarding Jurisdiction and Requiring Judicial Notice

Swanson filed a charge of discrimination with the Equal Employment Opportunity Commission on January 22, 2015, alleging that he had been terminated in retaliation for opposing sexual harassment.  Complaint, ¶ 28.  A pre-determination right to sue letter was issued on July 23, 2015.  Complaint, ¶ 29.  This action was commenced on September 2, 2015, asserting retaliation claims under Title VII, the NYCHRL and the NYFCA.  Docket No. 1.

On September 30, 2015, four weeks after this action had been commenced, an article appeared on page 3 of the New York Post entitled *"Exec's Bidder End"*.  *See New York*

6

*Post, September 30, 2015, p. 3.*   The article referred to the filing of this action, and quoted Plaintiff's counsel, Jason Solotaroff, extensively with respect to the New York False Claims Act retaliation claim.  Specifically, counsel is quoted as stating:  "It was Mr. Swanson's job to ensure that the BPCA followed anti-corruption guidelines.  It's outrageous he was terminated for doing just that."[1]

## POINT I

## PLEADING REQUIREMENTS PURSUANT TO FRCP 12(B)(6)

A plaintiff is required to plead his case to demonstrate that he is entitled to relief under the law. Fed. R. Civ. P. 12(b)(6). Generally, this requires "a short and plain statement of the claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Though the statements need not be "detailed," the FRCP's standard for pleadings "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation….naked assertions devoid of further factual enforcement" will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (holding that complaint failed to plead sufficient facts to state a claim). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

---

[1]  The full article can be found at http://nypost.com/2015/09/30/whistleblower-claims-he-was-fired-for-doing-his-job/.  We ask the Court to take judicial notice of this quote.  *Gonzales v. Nat'l Westminster Bank PLC*, 847 F. Supp. 2d 567, 569 (S.D.N.Y. 2012) (On motion to dismiss, in addition to the facts stated in the Complaint, the Court took judicial notice of publicly available information *including newspaper articles* and other public documents to provide "additional factual context to Plaintiffs' allegations".)

POINT II

**PLAINTIFF'S TITLE VII RETALIATION CLAIM SHOULD BE DISMISSED**

**A.  The Application of *Iqbal/Twombly* to Retaliation Cases**

The Second Circuit Court of Appeals this year has addressed the *Iqbal/Twombly* standard on two occasions pertinent to this motion.  In *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015), the Court undertook an extensive analysis of *Iqbal* and *Twombly* to determine how these cases should be applied in the context of a discrimination case, in light of ample United States Supreme Court jurisprudence addressing pleading and proof in discrimination cases. Framing the issue as "what…must be plausibly supported when the plaintiff does not have direct evidence of discriminatory intent at the outset", the Court held:

> The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of a discriminatory motivation.

*Littlejohn*, 795 F.3d at 311.

Just one month after *Littlejohn* the Court decided *Vega v. Hempstead Union Free Sch. Dist.*, No. 14 Civ. 2265, 2015 WL 5127519 (2d Cir. Sept. 2, 2015), in which it considered "the applicable pleading standards for a retaliation claim."  *Vega*, 2015 WL 5127519, at *14. Citing *Iqbal*, the Court determined that "[t]he staring point is the statute" and then examined Title VII's retaliation provision.  *Id.*, at *10.  This provision states that it is an "unlawful employment practice" to take adverse action against an employee "because he has opposed any practice made an unlawful employment practice…or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *Id.*, at *14, *quoting* 42 U.S.C. §2000e-3(a).

Thus, according to the Second Circuit, "[F]or a retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Id.*, at *14.

The causation element to be pleaded must be "but for" causation. *Vega*, 2015 WL 5127519, at *15 ("the plaintiff must plausibly allege that the retaliation was a *'but for'* cause of the employer's adverse action"), *citing Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. __, 133 S.Ct. 2517, 2533 (2013). Under the "but for" standard, it is insufficient to allege that retaliation was a "substantial" or "motivating" factor, but instead requires a showing that "the adverse action would not have occurred in the absence of a retaliatory motive." *Vega*, 2015 WL 5127519, at *15, *quoting Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 836 (2d Cir. 2013).

### B.  The Complaint Does Not Support a Title VII Retaliation Claim

#### i.  The Complaint Fails To Satisfy The "But For" Standard

Plaintiff has not plausibly alleged that Title VII retaliation was the "but for" cause of his termination. The Complaint does nothing more than allege the month (January 2014) in which he complained about the sexual harassment of a subordinate, and the date three months later on which he was terminated.[2] The Complaint is bereft of any other factual allegations that directly or indirectly support even a minimal inference of any connection between protected activity and adverse action, let alone "but-for" causation. *See Thomson v. Odyssey House*, No. 14 CV 3857, 2015 WL 5561209, at *23 (E.D.N.Y. Sept. 21, 2015) (granting dismissal of Title VII retaliation claim for failing to allege facts supporting a minimal inference of retaliation).

---

[2] The allegations about Plaintiff's alleged February 2014 discussion with McIntyre are too vague and ambiguous to be considered protected activity. The Complaint merely alleges, within one paragraph, that after discovering that McIntyre was involved in secretive "closed-door" meetings regarding handbook revisions, he confronted her and made clear his opposition to her behavior. The Complaint offers no specifics, and therefore no clarity, as to whether he was opposing the secretive nature of these meetings, or some other conduct.

We acknowledge that the "but-for" standard "does not alter the plaintiff's ability to demonstrate causation... through temporal proximity". *Vega*, 2015 WL 5127519, at *15. Temporal proximity[3] can only be used, however, "if there are no allegations that would otherwise undermine but-for causation." *Soloviev v. Goldstein*, No. 14 Civ. 5035, 2015 WL 2249996, at *13 (E.D.N.Y. May 13, 2015).

In *Soloviev*, the plaintiff alleged that his termination as an aquatics director and swim team coach at City University violated federal and city discrimination laws, and constituted unlawful retaliation in violation of Title VII. He admitted in his amended complaint that he was told he was terminated for multiple reasons, including alleged violations of National Collegiate Athletic Association ("NCAA") recruiting policies. The Court dismissed the Title VII retaliation claim, holding that even if temporal proximity existed between the alleged protected activity and his termination, the complaint allegation regarding the NCAA investigation "wholly undermines any argument that but-for the [protected activity…he] would not have been fired." *Id.*

Here, like *Soloviev*, the allegations set forth in the Complaint, and the public comments of Plaintiff's counsel, wholly undermine "but for" causation. In Count Three of the Complaint Plaintiff asserts that he was terminated, *and that he was told he was terminated*, for internal complaints he made about an alleged failure to comply with contract procurement guidelines, allegedly in violation of the New York False Claims Act. *See* Complaint, ¶¶ 17-27, 36 (alleging that Plaintiff was terminated "*because of* lawful acts done by Plaintiff in furtherance of efforts to stop one or more violations of the" NYFCA) (emphasis added). These Complaint allegations are underscored by counsel's recent comments in the New York Post, in which he

---

[3] "Temporal proximity" measures the distance in time between the alleged protected activity, and the adverse employment action. *Weighing Temporal Proximity in Title VII Retaliation Claims*, 43 B.C. L. Rev. 741, 742 (2002).

states that "It was Mr. Swanson's job to ensure that the BPCA followed anti-corruption guidelines.  It's outrageous he was terminated for doing just that." *See New York Post, September 30, 2015, "Exec's Bidder End," p. 3.*

The absence of any substantive, factual allegations connecting his alleged protected activity to his termination is, therefore, fatal to Swanson's claim.  The Complaint fails to adequately plead that Plaintiff would not have been terminated absent a Title VII retaliatory motive.

ii.   **The Complaint Fails To Plead Temporal Proximity As a Matter of Law**

Assuming, *arguendo,* that temporal proximity can be considered, the Complaint fails to adequately allege causation through temporal proximity.

The Second  Circuit has articulated no 'bright line' rule for when an alleged retaliatory action occurs too far in time from the exercise of a federal right to be considered causally connected.  It is well settled, however, that "when 'mere temporal proximity' is offered to demonstrate causation, the protected activity and the adverse action must occur 'very close' together." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014); *Baldwin v. Cablevision Sys. Corp.*, 65 A.D.3d 961, 888 N.Y.S.2d 1, 6 (1st Dept. 2009); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (acknowledging that to establish causation in retaliation claims, temporal proximity must be "very close").  Moreover, "district courts in this Circuit have consistently held that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line."  *Ruhling v. Tribune Co.*, No. 04 Civ. 2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007).

Here, Plaintiff has alleged no facts that specifically link his opposition to the alleged sexual harassment to his termination.  Rather, he appears to rely exclusively on the three month period between his alleged protected activity and his termination, standing alone, without any intervening acts supporting the claim.  This is insufficient as a matter of law.  *See, e.g. Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439 (S.D.N.Y. 2013) (holding that no causal nexus existed between the protected activity and termination where the protected activity occurred approximately five weeks before termination, termination was ultimately the product "of an extensive period of progressive discipline", and plaintiff failed to offer any evidence to suggest that defendants'' stated reasons for plaintiff's termination were a pretext for retaliation); *Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475 (2d Cir. 2009) (concluding that no causal nexus existed where the  protected activity took place two months prior to the adverse employment action, and the employee did not allege any facts other than the temporal proximity of the events to evince any retaliatory intent); *Feliciano v. Alpha Sector, Inc.*, No. 00 Civ. 9309, 2002 WL 1492139 (S.D.N.Y. July 12, 2002) (finding that a former employee failed to show a causative link between her complaint of sexual harassment and either her suspension or subsequent termination two months later); *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("[W]ithout more, ... temporal proximity is insufficient to satisfy [Plaintiff's] burden to bring forward some evidence of pretext.")

In sum, Plaintiff's retaliation claims fall far short of the required pleading standard for retaliation cases under Title VII.  The Title VII retaliation claim is "unsupported by facts" and is nothing "more than unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 US at 678.  On this basis, Count One should be dismissed.

# POINT III

## THE REMAINING STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISICTION

The Complaint alleges the existence of a "federal question" as the basis for this Court's subject matter jurisdiction. Complaint, ¶ 9 (citing 28 U.S.C. §1331). Title VII is the only federal law identified in the Complaint. In the event the Title VII claim is dismissed, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state and city law claims.

As a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *Smith v. Johnson*, No. 14 Civ. 3975, 2014 WL 5410054, at *4 (S.D.N.Y. Oct. 24, 2014) (balancing the traditional "values of judicial economy, convenience, fairness, and comity," and applying the general rule, that "when a plaintiff's federal claims are dismissed, their non-federal claims should be dismissed as well."); *Henry*, *supra* (District court declined to exercise supplemental jurisdiction over NYCHRL claims following the dismissal of Title VII on a motion to dismiss reasoning that the court had not previously invested the judicial resources necessary to resolve those NYCHRL claims, and because dismissal at this pre-discovery stage would not cause substantial delay). This rule applies even where the state law claims are viable. *Gorokhovsky v. New York City Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014) (Summary Order) (declining to exercise supplemental jurisdiction over city law claims, and dismissing those claims even where plaintiff has stated plausible claims under the city law, but where there were no remaining viable federal claims); *Abraham v. New York Dep't of Educ.*, No. 06 Civ. 01053, 2011 WL 890749, at *2 (E.D.N.Y. Mar. 11, 2011) *citing Kolenovic v. ABM Indus. Inc.*, 361 F. App'x 246, 248 (2d Cir. 2010) (noting that, even after summary judgment, where the

parties have expended significant resources in litigating claims, "the district court may consider that [state law claims] would benefit from further development in the state courts, and for that reason dismiss the claim without prejudice to refiling in state court.").

Accordingly, Plaintiff's two non-federal claims should be dismissed at this stage where no viable Title VII claim can lie, minimal time and monetary resources have been expended in litigating the claims in federal court, and where the claims would benefit from development in state court. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (in deciding whether to exercise supplemental jurisdiction, a district court should balance the traditional "values of judicial economy, convenience, fairness, and comity.").

### POINT IV

### <u>PLAINTIFF'S NYCHRL RETALIATION CLAIM SHOULD BE DISMISSED</u>

Plaintiff's retaliation claim under the NYCHRL is essentially identical to the Title VII retaliation claim. There are no new or additional facts alleged, except that the NYCHRL claim is also asserted against defendant Hyman. *Compare* Complaint ¶¶ 31 and 32 *with* Complaint ¶¶ 33-34. Hence, Plaintiff essentially relies on the timing of his alleged protected activity (January 2014), and his termination three months later in April 2014, as the sole and exclusive basis supporting his claim of retaliation.

Despite the similarity between the federal and city retaliation claims, this Court is obligated to analyze the NYCHRL claim "separately and independently" from the federal claim. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). As *Vega* teaches, "the starting point" is the statute. Here, that statute is the New York City Human Rights Law, Section 8-107(7), which prohibits an employer from taking action "to retaliate or

14

discriminate in any manner against any person *because* such person has… opposed" a discriminatory practice.  (emphasis added).  It is well-settled that at the pleading stage, a plausible theory of causation under the NYCHRL is still required.[4]  *Gorokhovsky*, 552 F. App'x at 102.

Plaintiff's NYCHRL claim fails because there is no plausible theory of causation. As under Title VII, when temporal proximity provides the lone theory of causation, the protected activity and the adverse action must occur "very close" together.  *Feliciano v. City of New York*, No. 14 Civ. 6751, 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (citations omitted).  Thus, the three month gap between his alleged protected activity and his termination is insufficient to establish causation.  *See Baldwin*, 888 N.Y.S.2d at 6 (rejecting gap of 3 to 4 months when mere proximity alone is presented).

Assuming, *arguendo*, that the three month gap is close enough to establish sufficient temporal proximity under the New York City law, the Complaint remains deficient. Plaintiff fails to allege in any manner, directly or indirectly, that the individual who made the decision to terminate him, Defendant Hyman, knew or had knowledge of his protected activity. Without asserting that Hyman had knowledge of his conduct allegedly in opposition to sexual harassment, it is paradoxical to suggest that there was any retaliatory motivation behind Plaintiff's termination based on that conduct.  *Britt v. Merrill Lynch & Co.*, No. 08 Civ. 5356, 2011 WL 4000992, at *12 (S.D.N.Y. Aug. 26, 2011) (dismissing, on summary judgment, NYCHRL and NYSHRL claims where no admissible evidence that alleged retaliator had

---

[4] "But for" causation is not required under the NYCHRL.  *Weiss v. JPMorgan Chase & Co.*, No. 06 Civ. 4402, 2010 WL 114248, at *3-4 (S.D.N.Y. Jan. 13, 2010) (holding but-for causation applies under ADEA, however, under NYCHRL, plaintiff need only prove by a preponderance of the evidence that his age was "a motivating factor.")

knowledge of protected activity); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 271 (S.D.N.Y. 2007) ("[D]istrict courts have consistently held that, with regard to the causation prong of the *prima facie* standard, absent any evidence to support an inference that the decision makers knew of plaintiff's complaints, plaintiff cannot rely on circumstantial evidence of knowledge as evidence of causation.").

   Even if knowledge of his alleged protected activity can somehow be imputed to BPCA, the NYCHRL claim against Hyman should still be dismissed, as there are no factual allegations supporting the inference that she had knowledge of the protected activity. *Pedrosa v. City of New York*, No. 13 Civ. 01890, 2014 WL 99997, at *9-10 (S.D.N.Y. Jan. 9, 2014) (dismissing NYCHRL retaliation claim against individual defendants where complaint failed to allege they knew of plaintiff's protected activity).

   Because Plaintiff fails to adequately allege causation, Count Two of the Complaint, alleging retaliation in violation of the NYCHRL, must be dismissed.

**POINT V**

**<u>PLAINTIFF'S NYFCA RETALIATION CLAIM SHOULD BE DISMISSED</u>**

   Count Three, alleging a violation of NYFCA, fails to state a claim upon which relief can be granted. The allegations set forth in the Complaint (and statements made to the press) unequivocally establish that Swanson (1) has failed to properly plead a viable claim under NYFCA, (2) was not engaged in protected activity, since he was acting within the scope of his duties and responsibilities in "attempt[ing] to ensure that the approval process was followed" for two BPCA contracts (Complaint, ¶ 4) and (3) failed to put BPCA on notice that he was allegedly engaged in protected conduct. Swanson, therefore, has failed to set forth any facts that would suggest the claim is "plausible on its face." *Twombly,* 550 U.S. at 570.

16

To state a claim for retaliation under a false claims statute, an individual plaintiff must show that "(1) the employee engaged in conduct protected under the [statute]; (2) the employer knew that the employee was engaged in such conduct; and (3) the employer discharged, discriminated against or otherwise retaliated against the employee because of the protected conduct." *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 685 (S.D.N.Y. 2007).[5]

### A.  Plaintiff Did Not Engage In Protected Activity

#### i.   The Complaint Fails To Allege A Viable NYFCA Claim

This Complaint must be dismissed because Swanson fails to allege that his conduct was calculated or reasonably could have lead to a viable NYFCA claim.  NYFCA, by its terms, prohibits the presentation of false or fraudulent claims for payment to the government, and protects individuals who engage in conduct "to stop one or more violations" of the statute.  N.Y. State Fin. Law § 191(1) (McKinney).  A "claim" under NYFCA is specifically defined to mean "any request or demand, whether under a contract or otherwise, for money or property" presented to the state or local government.  N.Y. State Fin. Law § 188(1)(a) (McKinney).  The term "false claim" is defined as "any *claim* which is, either in whole or in part, false or fraudulent."  N.Y. State Fin. Law § 188(2) (McKinney) (emphasis added).  Hence, NYFCA makes it unlawful to present any false or fraudulent request or demand for money or property to the state.  *See Faldetta v. Lockheed Martin Corp.*, No. 98 Civ. 2614, 2000 WL 1682759, at *12 (S.D.N.Y. Nov. 9, 2000) (granting summary judgment where plaintiff's complaints about

---

[5] *McCallan,* and other cases cited in this section, interpret the Federal False Claims Act. It is well-settled, however, that "Section 191 [of the NYFCA] 'is essentially identical in language and substance to its federal counterpart,' and 'courts interpret [the former] by closely tracking judicial interpretation of [the latter].'" *Monsour v. New York State Office for People with Developmental Disabilities*, No. 13 Civ. 0336, 2014 WL 975604, at *10 (N.D.N.Y. Mar. 12, 2014) citing *Forkell v. Lott Assisted Living Corp.*, No. 10 Civ. 5765, 2012 WL 1901199, at *13 (S.D.N.Y. May 21, 2012).

compliance with government regulations failed to establish the existence of "fraudulent activity in submitting claims for payment").

Under this construct, in order to properly plead a claim for retaliation a plaintiff "must have been investigating matters that were calculated, or reasonably could have lead to, a viable [NYFCA] action." *Id.; see also U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998). "[T]he plaintiff must demonstrate that her investigation, inquiries, and/or testimony were directed at exposing a fraud upon the government" in violation of the statute. *Moor-Jankowski v. Bd. of Trustees of New York Univ.*, No. 96 Civ. 5997, 1998 WL 474084, at *10 (S.D.N.Y. Aug. 10, 1998), *quoting, Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034 (N.D. Ill. 1998).

Here, there are no factual allegations set forth in the Complaint that any claim, much less a false claim, within the meaning of NYFCA was made. Simply put, Swanson fails to allege that any a request or demand for money or property was presented to the state. Instead, the sole focus of the Complaint is that BPCA entered into contracts without following its internal approval process and guidelines. *See* Complaint, ¶ 4 (BPCA employees were allegedly "misrepresenting details of two BPCA contract proposals in an effort to bypass the BPCA contract approval process."). While the Complaint uses buzz-words like "fraudulent," "misrepresent," and "misleading," they are used to characterize the alleged efforts to "bypass the …approval process" and fail to describe or set forth facts describing an effort to present "a request or demand…for money or property" to the state. In the absence of such factual allegations, these buzz-words are unavailing. *See Moor-Jankowski, supra,* at *11 (12(b)(6) motion granted where complaint allegations regarding double-billing were nothing more than

disagreements on cost calculations, and no claim was asserted that fraudulent claims for money were presented to the state).

ii.   __Plaintiff Was Acting Within His Normal Duties and Responsibilities__

Activity is not protected when the individual (known as a "relator") presents information about potential fraud that is within his or her normal job duties and responsibilities. In such a case a presumption exists that the relator is "merely acting in accordance with his employment obligations". *Landfield v. Tamares Real Estate Holdings, Inc.*, 112 A.D.3d 487, 488, 976 N.Y.S.2d 381 (2013). To overcome the presumption, the relator must show that the complaint "went beyond the performance of his normal responsibilities". *Id.*

In *Landfield*, the Plaintiff was the company's Chief Financial Officer and Chief Operating Officer with responsibility for managing the company's financial affairs. He complained internally to his Chief Executive Officer ("CEO") about the CEO's use of company funds to evade state and federal taxes.   The First Department affirmed the dismissal of the NYFCA action, holding that "plaintiff was required to show that his complaints of noncompliance with the tax laws went beyond the performance of his normal job responsibilities so as to overcome the presumption that he was merely acting in accordance with his employment obligations." *Id.*[6]

---

[6] This analysis under the FCA is not unlike the analysis involving the First Amendment free speech rights of public employees.  In *Garcetti v. Ceballos*, 547 U.S. 410, 424, 126 S. Ct. 1951, 1961, 164 L. Ed. 2d 689 (2006), the Court held that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities."  The Court reasoned that the plaintiff in that case "did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings," and that "[w]hen he went to work and performed the tasks he was paid to perform, [plaintiff] acted as a government employee." *Id.* at 422. Therefore, the Court concluded that because his actions were within his job responsibilities, plaintiff's "allegations of unconstitutional retaliation must fail." *Id.* at 424.  *See also Morey v. Somers Cent. Sch. Dist.*, 410 F. App'x 398, 399-400 (2d Cir. 2011) (dismissing claim for retaliatory discharge by head custodian, responsible for overseeing the general cleaning and upkeep of a school building, and holding he was not engaged in protected activity when he reported the potential safety hazard of fallen insulation).

19

This standard compels dismissal of Plaintiff's NYFCA claim.  It is abundantly clear from the Complaint that Plaintiff was acting within the scope of his duties and responsibilities when he allegedly complained about violations of the BPCA's contract procurement guidelines.  He was Vice President of Administration at the time, and also held the roles of Chief Contracting Officer, and Internal Controls Officer.  Complaint, ¶ 12.  Among his job responsibilities were compliance, compliance operations, and contract oversight. Complaint, ¶¶ 11, 12 and 25. The issues he raised allegedly involved "misleadingly" breaking a web design contract into two pieces to avoid a bidding process, and failing to follow the approval process concerning an amendment to a legal services contract, a process which Plaintiff himself asserts required his approval.  Complaint, ¶¶ 19-20 and 24-25.  Consistent with his role as Chief Contracting Officer, with duties involving contract oversight, compliance and compliance operations, he "objected" to the contracts "and attempted to ensure that the approval process was followed."  Complaint, ¶ 4.  There is no specific allegation, nor even a hint or suggestion, that Plaintiff was doing anything other than acting within the scope of his duties and responsibilities. *See U.S.ex rel. Ivanov v. Exelis, Inc.*, 41 F. Supp. 3d 50, 53-4 (D.D.C. 2014) (dismissing FCA claim where no facts plead that investigation was outside scope of "normal job responsibilities" as a test engineer).; *Cf. Morey*, 410 F. App'x at 400 ("the conclusion that Morey spoke pursuant to his duties as head custodian is confirmed by the fact that he never publicly voiced his concerns…[r]ather he pursued exclusively internal channels.").

Plaintiff cannot plausibly argue that he was not acting within the scope of his duties and responsibilities in connection with these contracts.  He has stated publically, through counsel of record, that with respect to these contracts he was simply doing his job.   *See New York Post, September 30, 2015, p. 3, "Exec's Bidder End," supra.* There is no doubt, therefore,

that Plaintiff was "merely acting in accordance with his employment obligations."  He cannot show with any degree of plausibility that his "complaints of noncompliance… went beyond the performance of his normal job responsibilities." *Landfield*, 112 A.D.3d at 488. Accordingly, his NYFCA claim must be dismissed.

### iii.   Plaintiff Failed to Put BPCA on Notice of Protected Activity

Plaintiff's NYFCA claim also fails because, by merely doing his job, Plaintiff's actions failed to put his employer on notice that he was engaged in "protected" conduct. *McAllan*, 517 F. Supp. 2d at 685.  That is, he fails to allege that his activity was focused on advancing a NYFCA claim or revealing that which NYFCA seeks to prevent. *See U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 624 (S.D.N.Y. 2006). "The term 'protected conduct' is interpreted more narrowly when applied to FCA claims than to common or state law retaliatory discharge actions…plaintiff must demonstrate that [his] investigations, inquiries, and/or testimony were directed at exposing a fraud upon the government." *Johnson v. The Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 269 (W.D.N.Y. 2010) (holding that plaintiffs did "not allege that their complaints were made in furtherance of [a] *qui tam* action, or that they were part of an investigation by either plaintiff into Medicare/Medicaid fraud," instead, "plaintiffs' complaints appear[ed] to have been primarily motivated by frustration [with a failure to comply with internal procedures]..and moral objections to falsifying patient paperwork….")

In order to meet this standard, routine, job-related conduct, such as singular memos and casual objections, do not suffice.  *See Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 11316, 2009 WL 900739, at *10 (S.D.N.Y. Apr. 3, 2009) (plaintiff's single memo to her employer objecting to the use of grant funds was insufficient under the FCA as the memo merely

noted plaintiff's objection and that the purchase was made without plaintiff's consent, and was not directed at exposing a fraud upon the government).  Instead, a plaintiff must make a point of acting outside normal job responsibilities by "notifying a party outside the usual chain of command, advising [the defendant] to hire counsel, or taking 'any [other] action which a factfinder reasonably could conclude would put [the defendant] on notice that litigation [was] a reasonable possibility." *Cf. U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1238–1239 (D.C. Cir. 2012), *citing U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1261 (D.C. Cir. 2004) (holding that in order to constitute notice to an employer, plaintiffs in compliance roles must "overcome the presumption that they are merely acting in accordance within their employment obligations.").

Here, construing the Complaint in a light most favorable to Plaintiff, his conduct with respect to each contract was routine and job-related, and failed to put BPCA on notice of any possible protected activity as a matter of law.  The deficiencies begin early in the Complaint, when Plaintiff casually describes his action as an "attempt[] to ensure that the approval process was followed."  Complaint, ¶ 4.  By his own admission, he was responsible for compliance with that contractual approval process.  Complaint, ¶¶ 11, 12 and 25.

The specific allegations later in the Complaint are no more compelling.  According to his allegations regarding the web site contract, he merely informed McCabe of certain procurement guidelines, then indicates his disagreement with the process by describing it as "utterly bogus." (Complaint, ¶¶ 19- 22).  The allegations regarding the legal services contract are perfunctory as well.  The Complaint recites the issues Swanson learned of in March 2014 regarding this contract, and concludes by stating that one month later, in April 2014, he simply

"question[ed] the contract" when he "sent an email to Ms. Singh *addressing these issues and requesting that they be remedied.*" Complaint, ¶¶26-27 (emphasis added).

Thus, apart from a single colloquial description of one contract process as "bogus," and a lone email requesting that deficiencies with the other contract "be remedied," nothing more specific is alleged.

These allegations fall significantly short of what is necessary to establish notice of protected activity. There is nothing in the Complaint to suggest that Plaintiff was concerned with anything other than whether BPCA followed its own procurement guidelines. In fact, the Complaint concedes that compliance was his goal. Complaint, ¶ 4. There are no allegations, conclusory or factual, that state or suggest he acted beyond his normal job duties. Swanson does not allege or suggest that he went outside the usual chain of command, that he advised BPCA to hire counsel, or that he took any other action during his employment that would put BPCA on notice that he was alleging a corruption issue. He was simply "doing his job." *See New York Post, September 30, 2015, p. 3, "Exec's Bidder End," supra.*; Complaint, ¶ 11, 25. Therefore, Plaintiff's NYFCA allegations are insufficient to demonstrate that he put BPCA on notice of protected activity.

**<u>Conclusion</u>**

Based on the foregoing, Counts One, Two and Three of the Complaint must be dismissed because each fails to satisfy the requirements stating a claim under Rule 12(b)(6).  If the Court dismisses Count One and either declines to address Count Two and Count Three, or determines those claims to be viable, the Complaint should still be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Dated:  New York, New York
       October 21, 2015

Respectfully submitted,

VANDENBERG & FELIU, LLP
Attorneys for Defendants

By: <u>/s/ Christopher A. D'Angelo</u>
       Christopher A. D'Angelo
       Debra Kobrin Levy
       60 E. 42nd Street, 51st Floor
       New York, N.Y. 10165
       212-763-6822 (phone)
       646-599-9551 (fax)