UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

KIRK A. SWANSON,                                    Civ. No: 15-cv-06938

                        Plaintiff,

            -against-

BATTERY PARK CITY AUTHORITY, and
SHARI HYMAN,

                        Defendants.

------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' PARTIAL MOTION TO DISMISS

VANDENBERG & FELIU, LLP
Attorneys for Defendants
60 East 42nd Street, 51st Floor
New York, NY 10165
(212) 763-6800

# TABLE OF CONTENTS

Table of Authorities...........................................................................................................ii

Preliminary Statement...................................................................................................... 1

Statement of Facts............................................................................................................ 3

    General Allegations Regarding Swanson's Employment and Job Duties.................................. 3

    Allegations Regarding a Failure to Comply with Internal Procurement Guidelines.................. 3

POINT I
    Pleading Requirements Pursuant to FRCP 12(b)(6) ............................................................... 6

POINT II
    Plaintiff's NYFCA Retaliation Claim Should be Dismissed................................................... 6

    A.  Plaintiff Did Not Engage In Protected Activity .......................................................... 7

          i.   The Amended Complaint Fails To Allege A Viable NYFCA Claim ...................... 7

          ii.  Plaintiff Was Acting Within His Normal Duties and Responsibilities.................... 9

          iii.  Plaintiff Failed to Put BPCA on Notice of Protected Activity .............................. 11

Conclusion ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**

Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................................................ 6

Bell Atl. Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................................... 6, 7

Faldetta v. Lockheed Martin Corp.,
No. 98 Civ. 2614, 2000 WL 1682759 (S.D.N.Y. Nov. 9, 2000) ............................................... 8

Forkell v. Lott Assisted Living Corp.,
No. 10 Civ. 5765, 2012 WL 1901199 (S.D.N.Y. May 21, 2012) .............................................. 7

Garcetti v. Ceballos,
547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) ...................................................... 10

Gonzales v. Nat'l Westminster Bank PLC,
847 F. Supp. 2d 567 (S.D.N.Y. 2012) ..................................................................................... 6

Johnson v. The Univ. of Rochester Med. Ctr.,
686 F. Supp. 2d 259 (W.D.N.Y. 2010) ................................................................................. 11

Liburd v. Bronx Lebanon Hosp. Ctr.,
No. 07 Civ. 11316, 2009 WL 900739 (S.D.N.Y. Apr. 3, 2009) ............................................. 12

Luckey v. Baxter Healthcare Corp.,
2 F. Supp. 2d 1034 (N.D. Ill. 1998) ........................................................................................ 8

McAllan v. Von Essen,
517 F. Supp. 2d 672 (S.D.N.Y. 2007) ................................................................................. 7, 11

Monsour v. New York State Office for People with Developmental Disabilities,
No. 13 Civ. 0336, 2014 WL 975604 (N.D.N.Y. Mar. 12, 2014) ............................................. 7

Moor-Jankowski v. Bd. of Trustees of New York Univ.,
No. 96 Civ. 5997, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998) ........................................... 8, 9

Morey v. Somers Cent. Sch. Dist.,
410 F. App'x 398 (2d Cir. 2011) ...................................................................................... 10, 11

U.S. ex rel. Ivanov v. Exelis, Inc.,
41 F. Supp. 3d 50 (D.D.C. 2014) .......................................................................................... 10

U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.,
451 F. Supp. 2d 613 (S.D.N.Y. 2006) ................................................................................... 11

U.S. ex rel. Schweizer v. Oce N.V.,
   677 F.3d 1228 (D.C. Cir. 2012) .................................................................................. 12

U.S. ex rel. Williams v. Martin-Baker Aircraft Co.,
   389 F.3d 1251 (D.C. Cir. 2004) .................................................................................. 12

U.S. ex rel. Yesudian v. Howard Univ.,
   153 F.3d 731 (D.C. Cir. 1998) ...................................................................................... 8

**State Cases**

Landfield v. Tamares Real Estate Holdings, Inc.,
   112 A.D.3d 487, 976 N.Y.S.2d 381 (N.Y. App. Div. 2013) ........................... 9, 10, 11

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(6).................................................................................................... 6

N.Y. State Fin. Law § 188(1)(a) ...................................................................................... 8

N.Y. State Fin. Law § 188(2)............................................................................................ 8

N.Y. State Fin. Law § 191(1)............................................................................................ 7

New York City Human Rights Law, New York City Administrative Code, §8-107, *et seq.* .......... 1

New York False Claims Act, N.Y. State Fin. Law § 191 ................................................. 1

Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, *et seq.* ..................... 1

**Other Authorities**

*"Exec's Bidder End," New York Post, September 30, 2015, p. 3* ................................. 2, 5, 11, 14

Defendants Battery Park City Authority ("BPCA") and Shari Hyman ("Hyman") (collectively, "Defendants"), by their attorneys Vandenberg & Feliu, LLP, respectfully submit this Memorandum of Law in support of their motion for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Third Claim for Relief set forth in the Amended Complaint, for failure to state a claim upon which relief can be granted.

### Preliminary Statement

Plaintiff Kirk Swanson ("Plaintiff" or "Swanson") is a former employee of BPCA who claims that he was terminated in retaliation for his participation in various forms of protected conduct.   In the First and Second Claims for Relief, he asserts that he voiced opposition to the alleged sexual harassment of another BPCA employee, and was later retaliated against in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII") and the New York City Human Rights Law, New York City Administrative Code, §8-107, *et seq*. ("NYCHRL").   In the Third Claim for Relief, Swanson claims that he raised concerns regarding alleged violations of BPCA's internal contract procurement guidelines, and that his subsequent termination was retaliatory and therefore in violation of the New York False Claims Act, N.Y. State Fin. Law § 191 ("NYFCA").   The First and Third Claims for Relief are asserted against BPCA only, while the Second Claim for Relief is asserted against both Defendants.

Each of Swanson's claims is threadbare and without merit, though it appears he has met the minimal burden imposed on Plaintiffs with respect to pleading a claim for relief under Title VII and the NYCHRL.[1]

---

[1]  Defendants initially moved to dismiss all three claims for relief on October 21, 2015.  Pursuant to this Court's Individual Rules, Plaintiff filed an Amended Complaint on November 3, 2015, attempting to cure the defects in the original Complaint.

Swanson's NYFCA claim, however, is fundamentally flawed for a number of reasons, and must be dismissed.  First, the activity described by Plaintiff as protected under NYFCA amounts to nothing more than internal complaints regarding an alleged violation of BPCA's internal contract procurement processes.  The Amended Complaint makes no allegation whatsoever that there was any "false claim," as defined by the New York State Finance Law, and is deficient for that reason.  Second, even if the Amended Complaint did include an allegation regarding activity protected under the False Claims Act (which it does not), the claim still should be dismissed.  Swanson, a compliance officer with responsibility for assuring BPCA's compliance with its contract procurement procedures, claims that he was fired for trying to ensure that proper procurement protocols were followed.  In other words, Swanson is alleging that he was fired for doing his job, an allegation confirmed in the local news by Plaintiff's counsel just a few weeks ago. *See "Exec's Bidder End," New York Post, September 30, 2015, p. 3.*  It is well-settled that such an allegation is insufficient to make out a NYFCA claim.  Finally, the NYFCA claim should be dismissed because Plaintiff fails to allege that BPCA was on notice of a potential NYFCA claim, as is required.  Indeed, the factual allegations supporting the claim are superficial, at best.  Swanson alleges he merely referred to one contractual process as "bogus," and sent an email in which he "requested" the preparation of a file memo acknowledging the existence of alleged violations, and that the violations occurred without his knowledge.  These allegations might raise an inference that he was looking to protect himself from a claim of misfeasance, but hardly rise to the level of protected whistleblower activity.

In sum, the allegations set forth in the Amended Complaint are insufficient to sustain a NYFCA claim, compelling dismissal of the Third Claim for Relief.

<u>**Statement of Facts**</u>

Plaintiff's factual allegations are accepted as true for the purposes of this dismissal motion.  A brief summary of the allegations is set forth below.

<u>**General Allegations Regarding Swanson's Employment and Job Duties**</u>

Plaintiff was employed by BPCA from November 2012 to May 2014, in various positions.  Amended Complaint, ¶ 2. He started as Deputy Chief Administrative Officer, was then given the title of Internal Controls Officer and later named Chief Contracting Officer. Amended Complaint, ¶ 12.  His responsibilities in these roles included general administration, compliance and diversity. *Id.*

Swanson asserts that he was promoted twice in 2013, first, to Chief Administrative Officer in March 2013, and then to Vice-President of Administration in December 2013.  Amended Complaint, ¶¶ 12-13.  He retained his roles as Chief Contracting Officer and Internal Controls Officer, and took on additional responsibilities with respect to information technology, permitting, lease administration, compliance operations and some unidentified human resource functions.  Amended Complaint, ¶ 13.

<u>**Allegations Regarding a Failure to Comply with Internal Procurement Guidelines**</u>

Plaintiff alleges that beginning in February 2014, he "discovered that high-level BPCA employees were making false statements in an effort to bypass the BPCA's contract approval process."  Amended Complaint, ¶ 26.  The Amended Complaint recites allegations related to two particular projects.  First, Plaintiff takes issue with the manner in which BPCA internally processed contracts with the vendor responsible for redesigning two separate websites, to wit, BPCA's website and the website of its affiliated 501(c)(3), the Battery Park City Parks Conservancy.  Amended Complaint, ¶ 27.  Plaintiff alleges that BPCA "falsely characterized"

3

what should have been one contract as two separate contracts, not because the work related to two separate websites, but in order to enable the expenditure for each to fall below $50,000. In that case, each contract could then be designated as "discretionary procurements," allowing BPCA to avoid a formal Request for Proposal process. Amended Complaint, ¶¶ 28-29. Plaintiff concedes that BPCA obtained bids for the projects, but alleges in a wholly conclusory manner that BPCA failed to act in accordance with its own procurement guidelines when it only obtained two bids for the projects, one of which Plaintiff claims did not appear legitimate "based on the absence of documentation." Amended Complaint, ¶ 30. The Amended Complaint does not explain why it was "false" to enter into separate contracts for two separate web sites, what documentation was absent from the second bid, nor does it explain how this missing documentation gives rise to an inference that the bid was illegitimate. The Amended Complaint merely asserts that Plaintiff expressed his concern about the above objections by telling McCabe that the "situation" was "utterly bogus." Amended Complaint, ¶ 31.

Plaintiff also alleges that he discovered that the work on the two websites started before the contracts were approved, and that he "expressed his continued objections" to McCabe. Amended Complaint, ¶ 31. Notably, Plaintiff does not allege that the projects were not ultimately approved by the BPCA's Contract Selection Committee ("CSC"), which Plaintiff personally chaired as Chief Contracting Officer. Nor does the Amended Complaint allege that Plaintiff expressed any of his "objections" to the CSC at the time the contracts were approved. Indeed, other than his broad comments to McCabe, Plaintiff does not allege that he raised any issues regarding the website project procurement with anyone (until after he was terminated).

Swanson claims to have learned of a second alleged violation of BPCA's procurement guidelines in March 2014, regarding Acting General Counsel Singh's retention of

outside counsel for a particular legal assignment.  Amended Complaint, ¶ 33.  Plaintiff alleges that the contract was not "presented for approval" to the CSC, that unspecified "contract documents" erroneously referred to outside counsel as "pre-qualified," and was presented to Swanson's Deputy for approval when Swanson was on vacation.  Amended Complaint, ¶ 34.

      On April 8, 2014, one month after learning of the alleged violations, Swanson "sent an email to Ms. Singh addressing issues relating to the" contract.  Amended Complaint, ¶ 35.[2]  In that email Swanson "*requested* that Ms. Singh prepare a 'memo to file' acknowledging that she was responsible for the violations and that the violations had occurred without the knowledge of Mr. Swanson and the BPCA Contract Selection Committee."  *Id.* (emphasis added).

      Hyman advised Swanson on April 11, 2014, that his employment was being terminated in thirty days, allegedly citing his April 8 email to Singh as one of the reasons for his termination. Amended Complaint, ¶ 36.  The Amended Complaint does not specify, however, whether Hyman's reference to the email related to the content or tone with which Swanson addressed his colleague.

      This action was commenced on September 2, 2015.  Just four weeks later, on September 30, 2015, an article appeared on page 3 of the New York Post entitled *"Exec's Bidder End"*.  *See New York Post, September 30, 2015, p. 3.*  The article referred to the filing of this action, and quoted Plaintiff's counsel, Jason Solotaroff, extensively with respect to the New York False Claims Act retaliation claim.  Specifically, counsel is quoted as stating:  "It was Mr.

---

[2] Though it is quoted extensively in the Amended Complaint, Plaintiff fails to attach the email he sent to Singh.

Swanson's job to ensure that the BPCA followed anti-corruption guidelines.  It's outrageous he was terminated for doing just that."[3]

## POINT I

## PLEADING REQUIREMENTS PURSUANT TO FRCP 12(B)(6)

A plaintiff is required to plead his case to demonstrate that he is entitled to relief under the law.  Fed. R. Civ. P. 12(b)(6). Generally, this requires "a short and plain statement of the claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Though the statements need not be "detailed," the FRCP's standard for pleadings "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation....naked assertions devoid of further factual enforcement" will not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (holding that complaint failed to plead sufficient facts to state a claim).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

## POINT II

## PLAINTIFF'S NYFCA RETALIATION CLAIM SHOULD BE DISMISSED

The Third Claim for Relief, alleging a violation of NYFCA, fails to state a claim upon which relief can be granted.  The allegations set forth in the Amended Complaint (and

---

[3] The full article can be found at http://nypost.com/2015/09/30/whistleblower-claims-he-was-fired-for-doing-his-job/.  We ask the Court to take judicial notice of this quote.  *Gonzales v. Nat'l Westminster Bank PLC*, 847 F. Supp. 2d 567, 569 (S.D.N.Y. 2012) (On motion to dismiss, in addition to the facts stated in the complaint, the Court took judicial notice of publicly available information *including newspaper articles* and other public documents to provide "additional factual context to Plaintiffs' allegations".)

statements made to the press) unequivocally establish that Swanson (1) has failed to properly plead a viable claim under NYFCA, (2) was not engaged in protected activity, since he was acting within the scope of his duties and responsibilities in "attempt[ing] to ensure that the approval process was followed" for two BPCA contracts (Amended Complaint, ¶ 4), and (3) failed to put BPCA on notice that he was allegedly engaged in protected conduct. Swanson, therefore, has failed to set forth any facts that would suggest the claim is "plausible on its face." *Twombly,* 550 U.S. at 570.

To state a claim for retaliation under a false claims statute, an individual plaintiff must show that "(1) the employee engaged in conduct protected under the [statute]; (2) the employer knew that the employee was engaged in such conduct; and (3) the employer discharged, discriminated against or otherwise retaliated against the employee because of the protected conduct." *McAllan v. Von Essen,* 517 F. Supp. 2d 672, 685 (S.D.N.Y. 2007).[4]

### A. Plaintiff Did Not Engage In Protected Activity

#### i. The Amended Complaint Fails To Allege A Viable NYFCA Claim

The Amended Complaint must be dismissed because Swanson fails to allege that his conduct was calculated or reasonably could have lead to a viable NYFCA claim. NYFCA, by its terms, prohibits the presentation of false or fraudulent claims for payment to the government, and protects individuals who engage in conduct "to stop one or more violations" of the statute. N.Y. State Fin. Law § 191(1). A "claim" under NYFCA is specifically defined to mean "any request or demand, whether under a contract or otherwise, *for money or property*"

---

[4] *McCallan,* and other cases cited in this section, interpret the Federal False Claims Act. It is well-settled, however, that "Section 191 [of the NYFCA] 'is essentially identical in language and substance to its federal counterpart,' and 'courts interpret [the former] by closely tracking judicial interpretation of [the latter].'" *Monsour v. New York State Office for People with Developmental Disabilities,* No. 13 Civ. 0336, 2014 WL 975604, at *10 (N.D.N.Y. Mar. 12, 2014) citing *Forkell v. Lott Assisted Living Corp.,* No. 10 Civ. 5765, 2012 WL 1901199, at *13 (S.D.N.Y. May 21, 2012).

presented to the state or local government. N.Y. State Fin. Law § 188(1)(a) (emphasis added). The term "false claim" is defined as "any *claim* which is, either in whole or in part, false or fraudulent." N.Y. State Fin. Law § 188(2) (emphasis added). Hence, NYFCA makes it unlawful to present any false or fraudulent request or demand for money or property to the state. *See Faldetta v. Lockheed Martin Corp.*, No. 98 Civ. 2614, 2000 WL 1682759, at *12 (S.D.N.Y. Nov. 9, 2000) (granting summary judgment where plaintiff's complaints about compliance with government regulations failed to establish the existence of "fraudulent activity in submitting claims for payment").

Under this construct, in order to properly plead a claim for retaliation a plaintiff "must have been investigating matters that were calculated, or reasonably could have lead to, a viable [NYFCA] action." *Id.; see also U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998). "[T]he plaintiff must demonstrate that her investigation, inquiries, and/or testimony were directed at exposing a fraud upon the government" in violation of the statute. *Moor-Jankowski v. Bd. of Trustees of New York Univ.*, No. 96 Civ. 5997, 1998 WL 474084, at *10 (S.D.N.Y. Aug. 10, 1998), *quoting, Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034 (N.D. Ill. 1998).

Here, there are no factual allegations set forth in the Amended Complaint that any claim, much less a false claim, within the meaning of NYFCA was made. Simply put, Swanson fails to allege that any a request or demand for money or property was presented to the state. Instead, the sole focus of the Amended Complaint is that BPCA entered into contracts without following certain aspects of its internal approval process and guidelines. *See* Amended Complaint, ¶ 5 (BPCA employees were allegedly "misrepresenting details of two BPCA contract proposals in an effort to bypass the BPCA contract approval process."). While the Amended

Complaint uses buzz-words like "false," "falsely," "misrepresent," and "fraudulent," they are used to characterize the alleged efforts to "bypass the …approval process" and fail to describe or set forth facts describing an effort to present "a [false] request or demand…for money or property" to the state.   In the absence of such factual allegations, these buzz-words are unavailing.  *See Moor-Jankowski, supra*, at *11 (12(b)(6) (motion granted where complaint allegations regarding double-billing were nothing more than disagreements on cost calculations, and no claim was asserted that fraudulent claims for money were presented to the state).

ii.   **Plaintiff Was Acting Within His Normal Duties and Responsibilities**

Activity is not protected when the individual (known as a "relator") presents information about potential fraud that is within his or her normal job duties and responsibilities. In such a case a presumption exists that the relator is "merely acting in accordance with his employment obligations".  *Landfield v. Tamares Real Estate Holdings, Inc.*, 112 A.D.3d 487, 488, 976 N.Y.S.2d 381 (N.Y. App. Div. 2013).  To overcome the presumption, the relator must show that the Amended Complaint "went beyond the performance of his normal responsibilities".  *Id.*

In *Landfield*, the Plaintiff was the company's Chief Financial Officer and Chief Operating Officer with responsibility for managing the company's financial affairs. He complained internally to his Chief Executive Officer ("CEO") about the CEO's use of company funds to evade state and federal taxes.  The First Department affirmed the dismissal of the NYFCA action, holding that "plaintiff was required to show that his complaints of noncompliance with the tax laws went beyond the performance of his normal job responsibilities

so as to overcome the presumption that he was merely acting in accordance with his employment obligations." *Id.*[5]

        This standard compels dismissal of Plaintiff's NYFCA claim.  It is abundantly clear from the Amended Complaint that Plaintiff was acting within the scope of his duties and responsibilities when he allegedly complained about violations of the BPCA's contract procurement guidelines.  He was Vice President of Administration at the time, and also held the roles of Chief Contracting Officer, and Internal Controls Officer.  Amended Complaint, ¶ 13.  Among his job responsibilities were compliance, compliance operations, and contract oversight.  Amended Complaint, ¶¶ 12, 13 and 34. The issues he raised allegedly involved "falsely" breaking a web design contract into two pieces to avoid a bidding process, and failing to follow the approval process concerning an amendment to a legal services contract, a process which Plaintiff himself asserts required his approval.   Amended Complaint, ¶¶ 28-29 and 33-34. Consistent with his role as Chief Contracting Officer, with duties involving contract oversight, compliance and compliance operations, he "objected" to the contracts "and attempted to ensure that the approval process was followed."  Amended Complaint, ¶ 5.  There is no specific allegation, nor even a hint or suggestion, that Plaintiff was doing anything other than acting within the scope of his duties and responsibilities. *See U.S. ex rel. Ivanov v. Exelis, Inc.*, 41 F. Supp. 3d 50, 53-4 (D.D.C. 2014) (dismissing FCA claim where no facts plead that investigation

---

[5] This analysis under the FCA is not unlike the analysis involving the First Amendment free speech rights of public employees.  In *Garcetti v. Ceballos*, 547 U.S. 410, 424, 126 S. Ct. 1951, 1961, 164 L. Ed. 2d 689 (2006), the Court held that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities."  The Court reasoned that the plaintiff in that case "did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings," and that "[w]hen he went to work and performed the tasks he was paid to perform, [plaintiff] acted as a government employee." *Id.* at 422. Therefore, the Court concluded that because his actions were within his job responsibilities, plaintiff's "allegations of unconstitutional retaliation must fail." *Id.* at 424. *See also Morey v. Somers Cent. Sch. Dist.*, 410 F. App'x 398, 399-400 (2d Cir. 2011) (dismissing claim for retaliatory discharge by head custodian, responsible for overseeing the general cleaning and upkeep of a school building, and holding he was not engaged in protected activity when he reported the potential safety hazard of fallen insulation).

was outside scope of "normal job responsibilities" as a test engineer); *Cf. Morey*, 410 F. App'x at 400 ("the conclusion that Morey spoke pursuant to his duties as head custodian is confirmed by the fact that he never publicly voiced his concerns…[r]ather he pursued exclusively internal channels.").

Plaintiff cannot plausibly argue that he was not acting within the scope of his duties and responsibilities in connection with these contracts.  He has stated publically, through counsel of record, that with respect to these contracts he was simply doing his job.  *See New York Post, September 30, 2015, p. 3, "Exec's Bidder End," supra.*  There is no doubt, therefore, that Plaintiff was "merely acting in accordance with his employment obligations."  He cannot show with any degree of plausibility that his "complaints of noncompliance… went beyond the performance of his normal job responsibilities."  *Landfield*, 112 A.D.3d at 488.  Accordingly, his NYFCA claim must be dismissed.

### iii.    **Plaintiff Failed to Put BPCA on Notice of Protected Activity**

Plaintiff's NYFCA claim also fails because, by merely doing his job, Plaintiff's actions failed to put his employer on notice that he was engaged in "protected" conduct. *McAllan*, 517 F. Supp. 2d at 685.  That is, he fails to allege that his activity was focused on advancing a NYFCA claim or revealing that which NYFCA seeks to prevent.  *See U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 624 (S.D.N.Y. 2006). "The term 'protected conduct' is interpreted more narrowly when applied to FCA claims than to common or state law retaliatory discharge actions…plaintiff must demonstrate that [his] investigations, inquiries, and/or testimony were directed at exposing a fraud upon the government." *Johnson v. The Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 269 (W.D.N.Y. 2010) (holding that plaintiffs did "not allege that their complaints were made in

furtherance of [a] *qui tam* action, or that they were part of an investigation by either plaintiff into Medicare/Medicaid fraud," instead, "plaintiffs' complaints appear[ed] to have been primarily motivated by frustration [with a failure to comply with internal procedures]..and moral objections to falsifying patient paperwork....")

In order to meet this standard, routine, job-related conduct, such as singular memos and casual objections, do not suffice. *See Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 11316, 2009 WL 900739, at *10 (S.D.N.Y. Apr. 3, 2009) (plaintiff's single memo to her employer objecting to the use of grant funds was insufficient under the FCA as the memo merely noted plaintiff's objection and that the purchase was made without plaintiff's consent, and was not directed at exposing a fraud upon the government). Instead, a plaintiff must make a point of acting outside normal job responsibilities by "notifying a party outside the usual chain of command, advising [the defendant] to hire counsel, or taking 'any [other] action which a factfinder reasonably could conclude would put [the defendant] on notice that litigation [was] a reasonable possibility." *Cf. U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1238–1239 (D.C. Cir. 2012), *citing U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1261 (D.C. Cir. 2004) (holding that in order to constitute notice to an employer, plaintiffs in compliance roles must "overcome the presumption that they are merely acting in accordance with their employment obligations.").

Here, construing the Amended Complaint in a light most favorable to Plaintiff, his conduct with respect to each contract was routine and job-related, and failed to put BPCA on notice of any possible protected activity as a matter of law. The deficiencies begin early in the Amended Complaint, when Plaintiff casually describes his action as an "attempt[] to ensure that the approval process was followed." Amended Complaint, ¶ 5. By his own admission, he was

responsible for compliance with that contractual approval process.  Amended Complaint, ¶¶ 12, 13 and 34.

   The specific allegations later in the Amended Complaint are no more compelling. According to his allegations regarding the web site contract, he merely informed McCabe of certain procurement guidelines, then indicated his disagreement with the process by describing it as "utterly bogus."  Amended Complaint, ¶¶ 30-31.  The allegations regarding the legal services contract are perfunctory as well.  The Amended Complaint recites the issues Swanson learned of in March 2014 regarding this contract, and concludes by stating that one month later, in April 2014, he simply "sent an email to Ms. Singh *addressing issues* relating to the . . . contract" and "*requested* that Ms. Singh prepare a 'memo to file' acknowledging she was responsible for violations ... [which] had occurred without the knowledge of Mr. Swanson and the BPCA Contract Selection Committee."  Amended Complaint, ¶¶ 35 (emphasis added).

   Thus, apart from a single colloquial description of one contract process as "bogus," and a lone email *requesting* acknowledgment of the violations and absolving him of any possible culpability for those violations, nothing more specific is alleged.

   These allegations fall significantly short of what is necessary to establish notice of protected activity.  There is nothing in the Amended Complaint to suggest that Plaintiff was concerned with anything other than whether BPCA followed its own procurement guidelines, and insuring he was not to blame for a perceived violation of those guidelines, which Plaintiff concedes was his goal as Vice President of Administration, Chief Contracting Officer and Internal Controls Officer.  Amended Complaint, ¶ 5.  There are no allegations, conclusory or factual, that state or suggest he acted beyond his normal job duties.  Swanson does not allege or suggest that he went outside the usual chain of command, that he advised BPCA to hire counsel,

or that he took any other action during his employment that would put BPCA on notice that he was alleging a corruption issue.  He was simply "doing his job."  *See New York Post, September 30, 2015, p. 3, "Exec's Bidder End," supra.*; Amended Complaint, ¶¶ 11, 25. Therefore, Plaintiff's NYFCA allegations are insufficient to demonstrate that he put BPCA on notice of protected activity.

<u>**Conclusion**</u>

Based on the foregoing, the Third Claim for Relief set forth in the Amended Complaint must be dismissed because it fails to satisfy the requirements for stating a claim under Rule 12(b)(6).

Dated: New York, New York
       November 24, 2015

           Respectfully submitted,

           VANDENBERG & FELIU, LLP
           Attorneys for Defendants

           By: <u>/s/ Christopher A. D'Angelo</u>
               Christopher A. D'Angelo
           Debra Kobrin Levy
           60 E. 42nd Street, 51st Floor
           New York, N.Y. 10165
           212-763-6822 (phone)
           646-599-9551 (fax)