GISKAN SOLOTAROFF ANDERSON & STEWART LLP
11 Broadway, Suite 2150
New York, New York 10004
(646) 964-9640
Jason L. Solotaroff
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

KIRK A. SWANSON,

                         Plaintiff,                    Civ. No.:15-CV-6938(JPO)

            -against-

BATTERY PARK CITY AUTHORITY, and
SHARI HYMAN,

                         Defendants.
------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL DISMISSAL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS...............................................................................2

ARGUMENT ...............................................................................................5

   I.   APPLICABLE LEGAL STANDARDS FOR A MOTION TO DISMISS
PURSUANT TO FCRP 12(B)(6). ..................................................................5

   II.  MR. SWANSON HAS ALLEGED THE REQUSITE UNDERLYING FALSE
CLAIM CONDUCT...................................................................................6

   III.   MR. SWANSON HAS SUFFICIENTLY ALLEGED THAT HE ENGAGED IN
PROTECTED CONDUCT.............................................................................8

   IV.   MR. SWANSON'S ALLEGATIONS RELATING TO NOTICE ARE
SUFFICIENT. ..........................................................................................12

      A.   Exercise of Customary Responsibilities Can Constitute Protected Conduct
Under the Amended NYFCA and FCA. ........................................................12

      B.   Mr. Swanson's Conduct Was Sufficiently Outside Of His Customary
Responsibilities to Put Defendants On Notice That He Was Engaged  In
Protected Conduct. ................................................................................14

CONCLUSION ...........................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Adiram v. Catholic Guardian Servs.*,
2015 U.S. Dist. LEXIS 130111 (E.D.N.Y. Sept. 23, 2015) ...............................................11

*Farnsworth v. HCA, Inc.*,
2015 U.S. Dist. LEXIS 119261 (M.D. Fla. Sept. 8, 2015).........................................10, 11

*Fisch v. New Heights Acad. Charter Sch.*,
2012 U.S. Dist. LEXIS 131603 (S.D.N.Y. Sept. 13, 2012) ............................................10

*Halasa v. ITT Educ. Servs.*,
690 F.3d 844 (7th Cir. 2012) ..........................................................................................11

*Johnson v. Univ. of Rochester Med. Ctr.*,
686 F. Supp. 2d 259 (W.D.N.Y. 2010)............................................................................10

*Layman v. MET Labs., Inc.*,
2013 U.S. Dist. LEXIS 71038 (D. Md. May 20, 2013)................................................9, 13

*Liburd v. Bronx Leb. Hosp. Ctr.*,
2009 U.S. Dist. LEXIS 61131 (S.D.N.Y. Apr. 2, 2009) ...................................................10

*Malanga v. NYU Langone Med. Ctr.*,
2015 U.S. Dist. LEXIS 153304 (S.D.N.Y. Nov. 12, 2015)..............................................13

*Pitts v. Howard Univ.*,
2015 U.S. Dist. LEXIS 85274 (D.D.C. July 1, 2015) ......................................................15

*Stein v. Tri-City Healthcare Dist.*,
2014 U.S. Dist. LEXIS 121112 (S.D. Cal. Aug. 27, 2014).............................................15

*United States ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*,
2015 U.S. Dist. LEXIS 150321 (D. Kan. Nov. 5, 2015)............................................10, 11

*United States ex rel. Feldman v. Van Gorp*, 674 F. Supp. 2d 475 (S.D.N.Y. 2009)...........8

*United States ex rel. Gates v. Austal USA, LLC*,
2015 U.S. Dist. LEXIS 133840 (S.D. Ala. Aug. 10, 2015)..............................................11

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) ............................................................................................7

*United States ex rel. Head v. Kane Co.*,
798 F. Supp. 2d 186 (D.D.C. 2011)....................................................................................8

*United States ex rel. Laird v. Lockheed Martin Eng'g & Science Servs. Co.*,
491 F.3d 254 (5th Cir. 2007) ...................................................................7

*United States ex rel. Marcus v. Hess*,
317 U.S. 537 (1943) ...................................................................7

*United States ex rel. Moore v. Cmty. Health Servs.*,
2012 U.S. Dist. LEXIS 43904 (D. Conn. Mar. 29, 2012) ...................................11

*United States ex rel. Sarafoglou v. Weill Med. College of Cornell Univ.*,
451 F. Supp. 2d 613 (S.D.N.Y. 2006) ...................................................10

*United States ex rel. Schweizer v. Océ N.V.*,
677 F.3d 1228 (D.C. Cir. 2012)................................................... 10, 12-15

*United States ex rel. Shemesh v. CA, Inc.*,
89 F. Supp. 3d 36 (D.D.C. 2015)...................................................7

*United States ex rel. Simpson v. Bayer Healthcare*,
732 F.3d 869 (8th Cir. Minn. 2013) ...................................................7

*United States ex rel. Tran v. Computer Scis. Corp.,* 53 F. Supp. 3d 104 (D.D.C. 2014)....8

*United States ex rel. Willard v. Humana Health Plan of Texas*, *Inc.*,
336 F.3d 375 (5th Cir. 2003) ...................................................7

*United States v. Wells Fargo Bank, N.A.*,
972 F. Supp. 2d 593 (S.D.N.Y. 2013) ...................................................7

*Warren v. John Wiley & Sons, Inc.*,
952 F. Supp. 2d 610 (S.D.N.Y. 2013) ...................................................5

**State Cases**
*Landfield v. Tamares Real Estate Holdings, Inc.*,
112 A.D.3d 487 (1st Dept. 2013) ...................................................12

*State of New York ex rel. Seiden v Utica First Ins. Co.*,
96 A.D.3d 67 (1st Dept. 2012) ...................................................6

**Rules and Statutes**
*Federal False Claims Act*,
31 U.S.C.S. § 3729 *et seq.* ...................................................*passim*

*Federal Rules of Civil Procedure,*
12(b)(6)................................................................................................................5

*Fraud Enforcement and Recovery Act of 2009,*
123 Stat. 1622, Public Law 111–21..................................................................9

*New York's False Claims Act,*
N.Y. State Fin. L. §187 *et seq.* ..................................................................*passim*

**Publications**
*Claire M. Sylvia, The False Claims Act: Fraud Against the Government* (April 2013).....7

Plaintiff Kirk Swanson respectfully submits this memorandum of law in opposition to the motion of Defendants Battery Park City Authority and Shari Hyman to dismiss Mr. Swanson's claim under New York's False Claims Act, N.Y. State Fin. L. §191 ("NYFCA").

## PRELIMINARY STATEMENT

Defendants contend that Mr. Swanson's False Claims Act claim is legally insufficient for three reasons. Despite Mr. Swanson's allegation that false statements were made to obtain contracts with the BPCA and despite the legal principle that the fraudulent inducement of a government contract may constitute a false claim, Defendants claim that Mr. Swanson has not alleged underlying conduct that violated the NYFCA. Despite Mr. Swanson's allegation that he took a series of steps to alert senior officials at the BPCA of the fraudulent statements and despite the broad protection the NYFCA extends to person who engage in "efforts to stop" false claims, Defendants contend Mr. Swanson has not alleged protected activity under the NYFCA.  Finally, Defendants contend that insofar as Mr. Swanson alleges he was terminated for performing his job responsibilities, he cannot allege that he was engaged in protected activity under the NYFCA or that Defendants were on notice of that protected activity, even though that argument is premised on the former version of the NYFCA which required the protected activity to be linked to the filing of a qui tam action. The amended version of the NYFCA, with the above-referenced broad definition of protected activity, has no such limitation and does not exclude from its protection employees who are terminated for opposing fraudulent conduct as part of their job responsibilities. Moreover, even if the former version of the NYFCA was still in effect, Mr. Swanson expressed his objections

1

to Defendants' fraudulent conduct in a manner sufficiently distinct from his day-to-day responsibilities that Defendants were clearly on notice he was engaging in protected conduct.

Accordingly, Defendants' arguments are completely without merit and their motion should be denied.

## STATEMENT OF FACTS

As Defendants concede, the following facts alleged by Mr. Swanson must be accepted as true for the purposes of this motion.

In November 2012, Mr. Swanson was hired by the BPCA as Deputy Chief Administrative Officer. He was also given the title of Internal Controls Officer, and subsequently was named Chief Contracting Officer. His responsibilities included general administration, compliance, and diversity.  Mr. Swanson was promoted to Chief Administrative Officer in March 2013.[1]

In December 2013, Mr. Swanson was promoted to Vice-President of Administration.  He was given additional responsibilities over information technology, permitting, lease administration, compliance operations, and some functions of human resources, while still retaining his roles as Chief Contracting Officer and Internal Controls Officer.[2]

Mr. Swanson performed his duties at all times with dedication and in an exemplary manner.[3]  In January 2015, Mr. Swanson received a $40,000 raise.[4]

---

[1] Amended Complaint  ¶ 12. A copy of the Amended Complaint is attached as Exhibit A to the Affirmation of Jason L. Solotaroff In Opposition to Defendants' Motion for Partial Dismissal.
[2] *Id*. ¶ 13.
[3] *Id*. ¶ 14.

Mr. Swanson's fortunes at BPCA, however, turned drastically for the worse after he raised complaints about fraudulent contracting practices.[5]

Beginning in February 2014, Mr. Swanson discovered that high-level BPCA employees were making false statements in an effort to bypass the BPCA's contract approval process.[6]

In March 2014, Kevin McCabe, Special Assistant to the BPCA Chairman, Dennis Mehiel, advised Mr. Swanson that Ms. Hyman, who had recently been appointed President of the BPCA, wished to expedite a redesign of the websites for the BPCA and its affiliate the Battery Park Conservancy.[7] Mr. McCabe stated that Ms. Hyman was intent on selecting a particular vendor for the redesign, Revolver Studios. Mr. McCabe stated that Ms. Hyman wished to bypass the BPCA contracting procedure, which would have required a formal Request for Proposal and three competitive bids, by designating the contract as a "discretionary procurement."[8]

BPCA regulations only permit contracts involving expenditures of less than $50,000 to be designated as "discretionary procurements." In order to bring the Revolver Studios contract ("Revolver Contract") expenditure under $50,000, BPCA officials falsely characterized the one contract with Revolver as two contracts each with a value of under $50,000: one for the BPCA website and one for the Battery Park Conservancy website.[9]

---

[4] *Id.* ¶ 15.
[5] *Id.* ¶ 16.
[6] *Id.* ¶ 26.
[7] *Id.* ¶ 27.
[8] *Id.* ¶ 28.
[9] *Id.* ¶ 29.

Mr. Swanson informed Mr. McCabe that even for "discretionary procurements," BPCA guidelines required obtaining additional bids to ensure that the BPCA would pay a competitive price. Mr. McCabe only obtained one additional bid, which appeared not legitimate based on the absence of documentation.[10] Mr. Swanson protested to Mr. McCabe that the situation was "utterly bogus." Additionally, in April 2014 Mr. Swanson learned at senior staff meeting that the work on the website projects had begun prior to the contract being approved, again in violation of BPCA procedures. Mr. Swanson expressed his continued objections to Mr. McCabe, understanding that Mr. McCabe would communicate Mr. Swanson's objections to Mr. Mehiel and Ms. Hyman.[11]

The website project was not the only instance of BPCA senior staff fraudulently awarding a contract.[12] In March 2014, Seema Singh, who was then the BPCA Acting General Counsel, was attempting to gain approval for the amendment of a contract that the BPCA had entered into in February 2014 with a law firm, Liddle & Robinson LLP ("Liddle Robinson Contract"), to represent the BPCA in matters relating to "issuance of auction rate securities and related swap and financing transactions."[13]

Mr. Swanson discovered that the February Liddle Robinson Contract had not been presented for approval to the BPCA Contract Selection Committee, even though the BPCA contract approval process required that approval. Mr. Swanson also discovered that Ms. Singh had stated in the contract documents that Liddle & Robinson was "pre-qualified legal counsel" even though the law firm was not pre-qualified. Finally, Mr. Swanson learned that Ms. Singh had further bypassed the BPCA contracting process,

---

[10] *Id.* ¶ 30.
[11] *Id.* ¶ 31.
[12] *Id.* ¶ 32.
[13] *Id.* ¶ 33.

which would have required Mr. Swanson as Chief Contracting Officer to personally

approve the contract, by arranging to have the original contract approved by Mr.

Swanson's deputy while Mr. Swanson was out of the office on vacation.[14]

On April 8, 2014, Mr. Swanson sent an email to Ms. Singh addressing issues

relating to the Liddle & Robinson contract.  Mr. Swanson requested that Ms. Singh

prepare a "memo to file" acknowledging that she was responsible for violations of the

BPCA procurement guidelines and that the violation had occurred without the knowledge

of Mr. Swanson and the BPCA Contract Selection Committee.[15]

On April 11, 2014, less than three days after he sent the email to Ms. Singh

relating to the Liddle & Robinson contract, Mr. Swanson's employment was terminated.

Ms. Hyman told Mr. Swanson that email was one of the reasons he was terminated.[16]

## ARGUMENT

## I.     APPLICABLE LEGAL STANDARDS FOR A MOTION TO DISMISS PURSUANT TO FCRP 12(B)(6).

In deciding a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6),

"a court is obliged to 'accept as true all of the factual allegations contained in the

complaint' …[and draw] 'all inferences in the light most favorable to the non-moving

party's favor.'" *Warren v. John Wiley & Sons, Inc*., 952 F. Supp. 2d 610, 615 (S.D.N.Y.

2013) (citations omitted).

---

[14] *Id.* ¶ 34.
[15] *Id.* ¶ 35.
[16] *Id.* ¶ 36.

II.    **MR. SWANSON HAS ALLEGED THE REQUSITE UNDERLYING FALSE CLAIM CONDUCT.**

The complaint alleges the following fraudulent conduct in connection with efforts to obtain BPCA contracts:

- Falsely characterizing the Revolver Studios contract for redesign of the BPCA website as two separate contracts, each under $50,000, so that the contract would be considered a "discretionary procurement" not subject to the BPCA's competitive bidding requirement;

- The submission of an illegitimate competing bid for the website project in order to purportedly comply with BPCA guidelines;

- Falsely representing that Liddle Robinson LLP law firm was a "pre-qualified legal counsel" within the meaning of the BPCA guidelines when in fact the firm did not have that status.

Despite these allegations, Defendants contend that there has not been the requisite allegation of unlawful conduct under the NYFCA.  Specifically, Defendants claim that "there are no factual allegations that any claim, much less a false claim, within the meaning of the NYFCA was made."[17]  Defendants' view of NYFCA liability is, however, far too narrow.

As Defendants state in their brief to explain their reliance on federal caselaw, "it is well settled that … Section 191 of the [NYFCA] is essentially identical in language and substance to the Federal False Claims Act, 31 U.S.C.S. § 3730(h)."[18]  *See also State of New York ex rel. Seiden v Utica First Ins. Co.*, 96 AD3d 67, 71 (1st Dept. 2012), *lv denied* 19 N.Y.3d 810 (2012)("it is appropriate to look toward federal law when interpreting the New York act.")

---

[17] Memorandum of Law In Support of  Defendants' Partial Motion to Dismiss ("Def. Mem.") at 8.
[18] Def. Mem. at 7 n.4.

.       Under the federal False Claims Act ("FCA"), liability is not limited to the actual making of false claims to the government.  Courts have interpreted the statute to impose liability "when the contract under which payment is made was procured by fraud." *United States ex rel. Willard v. Humana Health Plan of Texas*, *Inc.*, 336 F.3d 375, 384 (5th Cir. 2003). *See also United States ex rel. Simpson v. Bayer Healthcare*, 732 F.3d 869, 876 (8th Cir. Minn. 2013) ("'Contrary to the district court's decision, in many of the [fraud-in-the-inducement] cases cited above the claims that were submitted were not in and of themselves false. . . . False Claims Act liability attached, however, because of the fraud surrounding the efforts to obtain the contract or benefit status, or the payments thereunder.'") (quoting *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999)); *Id.* ("'A fraudulent effort to obtain a contract, sometimes called 'fraud in the inducement,' can constitute a false or fraudulent claim for payment or approval.'")(quoting *Claire M. Sylvia, The False Claims Act: Fraud Against the Government § 4:29* (April 2013)); *United States ex rel. Shemesh v. CA, Inc.*, 89 F. Supp. 3d 36, 47 (D.D.C. 2015) ("Allegations that a defendant fraudulently induced the government to enter into a contract provide 'sufficient grounds for a False Claims Act claim to survive a Rule 12(b)(6) motion.'")(quoting *Harrison*, 176 F.3d at 791).

        For these types of FCA claims, even where the Defendants' "subsequent claims for payment made under the contract were not literally false, [because] they derived from the original fraudulent misrepresentation, they, too, became actionable false claims." *United States ex rel. Laird v. Lockheed Martin Eng'g & Science Servs. Co.*, 491 F.3d 254, 259 (5th Cir. 2007) (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 543-44 (1943)).  *See also United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 623

(S.D.N.Y. 2013)(courts have repeatedly held that the "use of fraudulent information to induce the Government to provide a … contract" constitutes a false claim under the FCA.)(internal cites omitted).

Mr. Swanson's allegations that false statements were made about the proposed government contractors in an effort to induce the BPCA to award contracts clearly constitutes sufficient pleading of a false claim under a fraudulent inducement theory. *See United States ex rel. Tran v. Computer Scis. Corp.,* 53 F. Supp. 3d 104, 130-131 (D.D.C. 2014)(plaintiff's allegations that government contractor who made misrepresentations concerning the identity of its subcontractors sufficient under fraudulent inducement theory); *United States ex rel. Head v. Kane Co*., 798 F. Supp. 2d 186 (D.D.C. 2011)(false statements about qualifications of proposed contractor sufficient to plead False Claims Act violation); *United States ex rel. Feldman v. Van Gorp*, 674 F. Supp. 2d 475, 479-480 (S.D.N.Y. 2009)(denying summary judgment where government contractor made false statements to obtain research grant).

## III.   MR. SWANSON HAS SUFFICIENTLY ALLEGED THAT HE ENGAGED IN PROTECTED CONDUCT.

The complaint alleges that Mr. Swanson protested to Kevin McCabe, the Special Assistant to BPCA's chairman, and Seema Singh, BPCA's Acting General Counsel, about the false statements made to obtain the Revolver Studios and Liddle Robinson contracts.

Defendants claim that this is not a sufficient allegation of protected conduct because Mr. Swanson "fails to allege that his activity was focused on advancing a NYFCA claim or revealing that which [the] NYFCA seeks to prevent."[19]

As an initial matter, Defendants' contention that Mr. Swanson was not attempting to "reveal what [the] NYFCA seeks to prevent" must be summarily rejected.  As set forth above, the NYFCA, like the federal False Claims Act, should be interpreted to prohibit the making of false statements in connection with the obtaining of contracts with New York State.  In communicating with senior officials at the BPCA about those types of false statements, Mr. Swanson was clearly attempting to reveal conduct prohibited by the NYFCA.

With respect to Defendants' argument that protected activity under the NYFCA's whistleblower provision must relate to a NYFCA claim, that argument appears to be based on a reading of the NYFCA prior to the 2010 amendments to the statute.  Prior to the 2010 amendment, protected conduct was limited to actions in "furtherance of an action brought under this article, including the investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." *See* L 2010, ch 379, § 9 (indicating revisions to statute).  However, the 2010 amendment broadened protected conduct to include "other efforts to stop one or more violations of this article." *Id*.

The NYFCA amendment adopted almost exactly a 2009 amendment to the federal false claims act whistleblower provision. *See* Section 4(d) of the Fraud Enforcement and Recovery Act of 2009, 123 Stat. 1622, Public Law 111–21. The federal amendment was intended to remedy court decisions that had "limited the scope of the False Claims Act's

---

[19] Def. Mem. at 11.

anti-retaliation provisions," H.R. Rep. No. 11-97, pt. 8, at 5 (2009)(quoted in *Layman v. MET Labs., Inc.*, 2013 U.S. Dist. LEXIS 71038 (D. Md. May 20, 2013)),  "represent[ed] a significant expansion of protection" for FCA whistleblowers, *United States ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*, 2015 U.S. Dist. LEXIS 150321 (D. Kan. Nov. 5, 2015), and extended protection "to steps taken to remedy fraud through other means, such as by internal reporting to a supervisor or compliance department, or refusing to participate in unlawful activity." *Farnsworth v. HCA, Inc.*, 2015 U.S. Dist. LEXIS 119261 (M.D. Fla. Sept. 8, 2015).

The cases on which Defendants rely for their argument that Mr. Swanson has not alleged protected conduct either pre-date the 2009 and 2010 federal and New York False Claims Act amendments or involve conduct occurring prior to the effective dates of the amendments. *See United States ex rel. Schweizer v. Océ N.V.*, 677 F.3d 1228, 1231 (D.C. Cir. 2012)(noting action was filed in 2006); *Johnson v. Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 263 (W.D.N.Y. 2010)(noting that alleged whistleblowers were terminated in 2006); *Liburd v. Bronx Leb. Hosp. Ctr.*, 2009 U.S. Dist. LEXIS 61131, at *8,*36 (S.D.N.Y. Apr. 2, 2009)(noting that plaintiff had been terminated in 2006 and stating that protected activity "must have been in furtherance of an action under the FCA."); *United States ex rel. Sarafoglou v. Weill Med. College of Cornell Univ.*, 451 F. Supp. 2d 613, 624 (S.D.N.Y. 2006)(citing previous version of FCA).

Even under the pre-amendment version of the FCA, courts defined protected activity broadly, finding activity protected so long as it was "calculated, or reasonably could lead, to a viable FCA action." *Fisch v. New Heights Acad. Charter Sch.*, 2012 U.S. Dist. LEXIS 131603 (S.D.N.Y. Sept. 13, 2012).  In *Fisch*, that involved conduct prior to

10

the effective date of the FCA, *id.* at *11, the court denied a motion to dismiss directed at allegations of protected conduct where the plaintiff complained to his employer's board of directors that "'someone could go to jail' if the relevant financial information was submitted to the government." *Id.* at 13.  *See also United States ex rel. Moore v. Cmty. Health Servs.*, 2012 U.S. Dist. LEXIS 43904**,** at *13, 26-27. (D. Conn. Mar. 29, 2012)(finding allegation that plaintiff complained to supervisors about fraudulent activity sufficient in case that "straddled" FCA amendments).

Cases interpreting the amended versions of the FCA confirm that there is a broad swath of protected conduct including "reporting suspected misconduct to internal supervisors." *Adiram v. Catholic Guardian Servs.*, 2015 U.S. Dist. LEXIS 130111, at *8, n.2 (E.D.N.Y. Sept. 23, 2015)(citing *Halasa v. ITT Educ. Servs.*, 690 F.3d 844, 847-48 (7th Cir. 2012). In *United States ex rel. Feaster v. Dopps Chiropractic Clinic, LLC*, 2015 U.S. Dist. LEXIS 150321 (D. Kan. Nov. 5, 2015), the court, based on the language of the FCA amendment, found protected activity where the plaintiff alleged he "reported … repeatedly opposed, [and] attempted to remedy fraudulent schemes …" *See also Farnsworth v. HCA, Inc.,* 2015 U.S. Dist. LEXIS 119261 (M.D. Fla. Sept. 8, 2015)(finding that "internally reporting [fraudulent] incidents and practices to specific members of … management was sufficient to allege protected activity"); *United States ex rel. Gates v. Austal USA, LLC*, 2015 U.S. Dist. LEXIS 133840 (S.D. Ala. Aug. 10, 2015)(alleged reporting of fraudulent conduct to supervisors sufficient).

Accordingly, given that the NYFCA's amendments correspond with the FCA and that amended version of the FCA protects against retaliation for internal complaints, Mr. Swanson's allegations that he complained internally about fraudulent statements to obtain

contracts for Revolver Studios and Liddle Robinson are sufficient allegations of protected conduct.

## IV.    MR. SWANSON'S ALLEGATIONS RELATING TO NOTICE ARE SUFFICIENT.

Defendants contend that because Mr. Swanson's job responsibilities included compliance and contract oversight his conduct could not have put them on notice that he was engaging in protected activity.

This is incorrect.  First, the NYFCA and FCA amendments that removed the requirement that protected conduct be in furtherance of a false claims court case undermine the viability of the principle that protected activity cannot involve the exercise of an employee's customary responsibilities. Second, even if that principle is still applicable in some instances, Mr. Swanson's conduct, which involved complaining outside his chain of command, was sufficiently outside the normal exercise of his responsibilities to clearly alert Defendants that he was engaged in protected conduct.

### A.    Exercise of Customary Responsibilities Can Constitute Protected Conduct Under the Amended NYFCA and FCA.

For Defendants' argument that protected conduct cannot include the exercise of an employee's customary responsibilities, Defendants rely on *Landfield v. Tamares Real Estate Holdings, Inc*., 112 A.D.3d 487 (1st Dept. 2013).  *Landfield* in turn relies on *United States ex rel. Schweizer v. Océ N.V.*, 677 F.3d 1228 (D.C. Cir. 2012) for that proposition.  But in *Schweizer* the D.C. Circuit expressed reservation about it. The D.C Circuit noted that the "customary responsibilities" exclusion was dependent on three sequential causation assumptions:

> One: only if the employer is aware that its employee is engaging in, say, the protected conduct of an investigation "in furtherance of" a False

12

> Claims Act suit can the employer fire the employee "because of" the
> employee's protected conduct. Two: an employer cannot be so aware if the
> employee is just performing his job. Three: therefore the employee must
> put his employer on notice that he "was pursuing an FCA case" before the
> employer "discharge[s]" him.

*Id*. at 1238-1239 (internal cites omitted).  The D.C. Circuit stated, however, that "step three presents some analytical difficulty in light of our holding that an employee engages in protected conduct even if the employee himself does not "'know' that the investigation he was pursuing could lead to a False Claims Act suit." *Id*. at 1239 (internal cites omitted).

What the court in *Schweizer* does not say is that a far more significant problem for these assumptions is that post the 2009 amendments, the FCA does not require a plaintiff claiming protected conduct to pursue a FCA action at all.  If the FCA and NYFCA protect a plaintiff from retaliation for engaging in any effort to prevent unlawful false claims, why should a plaintiff be required to put a defendant on notice that the plaintiff is pursuing a lawsuit?  Indeed, Judge Pauley earlier this year expressed doubt that the cases requiring employees to plead protected conduct beyond the exercise of their normal job responsibilities survived the 2009 amendments. *See Malanga v. NYU Langone Med. Ctr.,* 2015 U.S. Dist. LEXIS 153304, at *6 (S.D.N.Y. Nov. 12, 2015).  If, after all, Mr. Swanson is protected from retaliation for engaging in any effort to prevent contracting fraud, it should not matter if those efforts are related to his customary job duties. *See Layman v. MET Labs*., Inc., 2013 U.S. Dist. LEXIS 71038, at *24 (D. Md. May 20, 2013)(finding retaliation claim sufficient under post-amendment FCA when plaintiff test engineer refused to sign fraudulent report and complained to supervisor).

The issue, after all is pleading facts that create an inference of causation. While in some situations, a plaintiff exercising normal job responsibilities may not be able to plausibly allege causation, here the circumstances of Mr. Swanson's termination – in which he received a raise in January, raised issues concerning the fraudulent statements concerning the Revolver and Liddle Robinson contracts in March and April and was terminated, for no apparent reason, within days of writing an email critical of the contracting process – create a strong inference that not only were Defendants on notice of Mr. Swanson's protected conduct but, in fact, terminated him because of that conduct.

**B.     Mr. Swanson's Conduct Was Sufficiently Outside Of His Customary Responsibilities to Put Defendants On Notice That He Was Engaged In Protected Conduct.**

Even if a plaintiff's normal exercise of job responsibilities cannot be considered protected conduct, Mr. Swanson's conduct was sufficiently outside his day-to-day responsibilities to have clearly placed Defendants on notice that he was engaged in protected activity.  Mr. Swanson did not simply decline to approve the Revolver or contracts in his role as Chief Contracting Officer or vote against the contracts at a BPCA Contract Selection Committee Meeting. Mr. Swanson instead went outside the chain of command to express his objections to the fraudulent statements concerning the contracts to Kevin McCabe, the Special Assistant to the BPCA Chairman, knowing that Mr. McCabe would convey Mr. Swanson's position to the Chairman, and to Seema Singh, BPCA's Acting General Counsel.

This is the type of action that courts recognize as protected conduct even where they consider the employee's exercise of customary responsibilities to be insufficient. For example, in *Schweizer*, the plaintiff, who had compliance responsibilities, went outside

14

the chain of command and disobeyed orders from her supervisors to stop investigating the contracts at issue.  The D.C. Circuit held "[t]hese facts, if proven, would be sufficient to support a finding that Océ knew about Schweizer's protected conduct and fired her, at least in part, 'because of' that conduct."  677 F.3d at 1240.  *See also Pitts v. Howard Univ.*, 2015 U.S. Dist. LEXIS 85274, at *21 (D.D.C. July 1, 2015)(employee engaged in protected activity when he complained to COO and head of other department); *Stein v. Tri-City Healthcare Dist.*, 2014 U.S. Dist. LEXIS 121112, at *7 (S.D. Cal. Aug. 27, 2014) (compliance officer plaintiff engaged in protected activity when he conveyed objections to persons outside chain of command and counsel).

Accordingly, Mr. Swanson has sufficiently alleged that Defendants were on notice of his protected conduct.

## **CONCLUSION**

Defendants' motion should be denied in all respects.


Dated:          New York, New York
                December 22, 2015


                                        GISKAN, SOLOTAROFF, ANDERSON &
                                        STEWART LLP

                                                /s

                                By:     Jason L. Solotaroff
                                        jsolotaroff@gslawny.com
                                        646-964-9640
                                        11 Broadway, Suite 2150
                                        New York, New York 10004
                                        ATTORNEYS FOR PLAINTIFF

15